IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RON GOLAN and DORIT GOLAN, individually and on behalf of all others similarly situated,
    Plaintiffs,

v.

VERITAS ENTERTAINMENT, LLC, *et al.*,
    Defendants.

Case No. 4:14-cv-00069-ERW

Judge E. Richard Webber, Jr.

### MEMORANDUM IN SUPPORT OF JAMES R. LEININGER'S MOTION TO DISMISS

Plaintiffs failed to allege facts to support their claims that defendant James R. Leininger violated the Telephone Consumer Protection Act and Missouri's Telemarketing No-Call List Act ("Do Not Call" statute). Accordingly, Dr. Leininger moves this Court to dismiss him with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

Plaintiffs allege that defendants violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and Missouri's Do Not Call statute, Mo. Rev. Stat. § 407.1107.3(1)-(3), by making four million unsolicited telephone calls to "promote" the film Last Ounce of Courage. (ECF No. 4, ¶¶ 1-3, 32, 35.)  To state a TCPA claim against Dr. Leininger, plaintiffs must allege that Dr. Leininger initiated the calls, or that he is vicariously liable for making the calls. 47 U.S.C. § 227(b)(1)(B); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084-85 (C.D. Cal. 2012) (applying agency principles to analyze vicarious liability under the TCPA); *see also In the Matter of the Joint Petition Filed by Dish Network, LLC*, No. 11-50, 28 FCC Rcd. 6574, ¶¶ 24-47 (May 9, 2013) ("a seller is not directly liable for a violation of the TCPA unless it

initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer" under "federal common law" and "a broad range of agency principles").[1] To state a Do Not Call claim, plaintiffs must allege that Dr. Leininger made or "cause[d] to be made any telephone solicitation to any residential subscriber in this state who has given notice to the attorney general, in accordance with the rules promulgated pursuant to section 407.1101 of such subscriber's objection to receiving telephone solicitations." Mo. Rev. Stat. § 407.1098.

Plaintiffs do not allege that Dr. Leininger initiated or controlled any of the calls (they allege that co-defendants ccAdvertising and Gabe Joseph did), and they otherwise failed to allege facts that, if true, would state a TCPA or Do Not Call claim against Dr. Leininger.  The only specific factual allegations against Dr. Leininger are:

- Dr. Leininger "is a manager of Mission City Management," (ECF No. 4 at ¶ 15);

- Dr. Leininger "introduced Griffin of Veritas Marketing and Veritas Entertainment to Gabe Joseph and ccAdvertising," (ECF No. 4 at ¶ 29);

- Dr. Leininger "also introduced Griffin to radio talk show host and former Arkansas Governor, Mike Huckabee, and, in June or July 2012, Griffin went to Florida to screen Last Ounce of Courage to Huckabee at Huckabee's home, with Dr. Jim present," (ECF No. 4 at ¶ 31);

- "Joseph carbon copied Dr. Jim" on communications with Griffin, (ECF No. 4 at ¶ 33);

- "On September 6, 2012, Joseph sent Dr. Jim a test call of the Huckabee call for Last Ounce of Courage," (ECF No. 4 at ¶ 48); and,

- "Dr. Jim liked the Huckabee call but wanted the script to be shorter, to go from Segment 2 to Segment 5, and to skip the questions in between, because Dr. Jim

---

[1] The FCC's May 9, 2013 Ruling is not binding on federal courts because it is not a final order. *Dish Network, L.L.C. v. FCC*, No. 13-1182, 2014 WL 323660, at *1 (D.C. Cir. Jan. 22, 2014).  "[I]ts force is entirely dependent on its power to persuade."  Brief of FCC, at *16, *Dish Network, L.L.C. v. FCC*, No. 13-1182, 2013 WL 5960681 (D.C. Cir. Nov. 7, 2013).

'was anxious to get people to the move permission segment.'" (ECF No. 4 at ¶ 49).

These specific allegations, and plaintiffs' general allegations lumping the defendants together, are insufficient as a matter of law to state TCPA and Do Not Call claims against Dr. Leininger. Accordingly, the Court should dismiss Dr. Leininger with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions 'which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity.'" *Reitz v. Nationstar Mortg., LLC*, -- F. Supp. 2d. --, No. 4:12cv117SNLJ, 2013 WL 3282875, at * 1 (E.D. Mo. June 27, 2013) (quoting *Young v. City of St. Charles*, 244 F. 3d 623, 627 (8th Cir. 2001)). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "However, where a court can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." *Reitz*, 2013 WL 3282875, at *1 (quoting *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010)).

## ARGUMENT

**I.      Plaintiffs Failed to State a TCPA Claim Against Dr. Leininger.**

The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Plaintiffs do not allege that Dr. Leininger initiated the calls but instead allege that another party, defendant ccAdvertising, did so. (ECF No.

3

4 at ¶ 57.)  Thus, plaintiffs must allege facts that, if true, would make Dr. Leininger vicariously liable for the alleged violations of 47 U.S.C. § 227(b)(1)(B).  *Taco Bell Corp.*, 879 F. Supp. 2d at 1084-85; *see also In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 at ¶¶ 24-47.

To hold an individual liable for alleged violations of Section 227(b)(1)(B) of the TCPA, a plaintiff must show that an agency relationship exists between the individual, as the principal, and the telemarketer, as the agent, such that the individual is vicariously liable for the telemarketer's actions.  *Taco Bell Corp.*, 879 F. Supp. 2d at 1084-85.  "[T]o create an agency relationship sufficient to establish vicarious liability:  (1) the principal must consent, expressly or impliedly, to the agent's acting on the principal's behalf; and, (2) the agent must be subject to the principal's control."[2]  *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 385 (Mo. Ct. App. 1999).  The "touchstone" of any agency analysis "is whether the party sought to be held liable has the control or right to control the conduct of another in the performance of an act.'"  *Id.* at 385 (quoting *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. 1996)).  Indeed, "[a]gency means more than mere passive permission; it involves request, instruction, or command."  *Taco Bell Corp.*, 879 F. Supp. 2d at 1085.  Thus, to hold an individual vicariously liable for telephone calls allegedly made in violation of Section 227(b)(1)(B) of the TCPA, a plaintiff must plead facts sufficient to show that the individual controlled, or had the right to control, "the manner and means of the [telephone] campaign [the telemarketer] conducted."  *Id.* at 1084.

---

[2]   Missouri law has adopted the Restatement definition of agency.  *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. 2002).  "The federal common law of agency is in accord with the Restatement."  *Addison Automatics, Inc. v. RTC Group, Inc.*, No. 12C9869, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013).

DB04/1001663.0002/10405442.2

Because the absence of control "defeats the purported agency relationship," *Ford Motor Co.*, 63 S.W.3d at 642, and because allegations sufficient to show an agency relationship are necessary to establish vicarious liability, courts dismiss claims against defendants who exercised no control over the telemarketers who made the allegedly unlawful calls. *See Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13cv2018, 2013 WL 5346430, at *1-6 (N.D. Ill. Sept. 23, 2013) (granting motion to dismiss, holding that plaintiff "has failed to sufficiently allege facts to support vicarious liability under Section 227(b) of the TCPA"); *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1243-45 (S.D. Fla. 2013) (defendants could not be held vicariously liable because they did not exercise or have the right to exercise control over party who made the calls); *Taco Bell Corp.*, 879 F. Supp. 2d at 1084 (declining to hold defendant vicariously liable for TCPA violation where plaintiff failed to show that defendant had the right to, and manner and means to, control the text message campaign at issue); *Mey v. Pinnacle Sec., LLC*, No. 5:11cv47, 2012 WL 4009718, at *5-6 (N.D. W.Va. Sept. 12, 2012) (defendant could not be held vicariously liable because it had "little to no control over the means or manner by which these companies generate sales leads," and at most played a "passive role" in the alleged TCPA violation); *Ritter*, 987 S.W.2d at 385-86 (affirming award of summary judgment in favor of defendant, rejecting plaintiff's theory of vicarious liability); *Friedman v. Massage Envy Franchising, LLC*, No. 3:12cv02962, 2013 WL 3026641, at *3-5 (S.D. Cal. June 13, 2013) (granting motions to dismiss TCPA complaint, finding that plaintiffs failed to plead facts supporting agency allegations). *Compare Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. 01-cv-4360, 2003 WL 21384825, at *6-7 (D.C. Super. Ct. Apr. 17, 2003) (finding corporate officers personally liable for TCPA violations because of "their involvement with all aspects of Fax.Com from marketing to supervising employees"); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp.

5

2d 892, 898-99 (W.D. Tex. 2001) (finding individuals liable for TCPA violations because they "were the 'guiding spirits' and the 'central figures' behind the TCPA violations," "controlled all of [the telemarketer's] day-to-day operations," and "had direct, personal involvement in and ultimate control over every aspect of [the telemarketer's wrongful conduct . . . and/or directly controlled and authorized this conduct").

Here, plaintiffs fail to allege that Dr. Leininger is vicariously liable for ccAdvertising's calls. Plaintiffs allege no facts supporting any agency relationship. Plaintiffs do not allege that Dr. Leininger authorized ccAdvertising to act on his behalf, do not allege that ccAdvertising agreed to act on his behalf, do not allege that Dr. Leininger instructed ccAdvertising to make any of the calls, and do not allege that Dr. Leininger directed or controlled the manner or means in which ccAdvertising made the calls. In fact, plaintiffs expressly allege that other defendants took such actions:

- ccAdvertising decided to make the calls (ECF No. 4 at ¶ 44 (alleging that Joseph emailed Griffin, "'[w]e need to start our 'Artificial Intelligence Call' (AIC) calls with or without a Celebrity Voice");

- Brewer authorized ccAdvertising to make the calls (ECF No. 4 at ¶ 47 (alleging that Brewer "emailed Joseph, stating 'Let's go. The Huckabee AIC call is approved.'"); and,

- ccAdvertising and/or Joseph controlled the manner and means in which the calls were made (ECF No. 4 at ¶¶ 41, 50 (alleging that ccAdvertising drafted and edited the script); ¶ 64 ("Joseph and ccAdvertising obtained the telephone numbers called from a database purchased at least a decade ago . . . ."); ¶ 57 ("ccAdvertising initiated telephone calls to the Golans' residential telephone line, using Huckabee's prerecorded voice to deliver a message to advertise the commercial availability or quality of goods or services, i.e., to encourage the Golans to go see Last Ounce of Courage").)

Likewise, plaintiffs fail to plead facts sufficient to show that Dr. Leininger had any substantial involvement in the TCPA violations, much less that he was a "guiding spirit" or "central figure" behind them. *Compare Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898-99. At best,

6

plaintiffs allege only that (1) Dr. Leininger introduced ccAdvertising to the Veritas defendants, the companies that produced and marketed the film; (2) Dr. Leininger introduced Griffin to defendant Huckabee; (3) ccAdvertising's principal copied Dr. Leininger on certain email communications; (4) Dr. Leininger received a "test call of the Huckabee call for Last Ounce of Courage;" and, (5) Dr. Leininger wanted changes to the call script. (ECF No. 4 at ¶¶ 29, 31, 33, 48, 49.) Even accepting these allegations as true, they fail to support any claim that Dr. Leininger is vicariously liable. As courts have held, the TCPA does not "impose liability for editing the script to be followed by the telemarketers." *Charvat v. Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167, 179 (Ohio Ct. App. 2008). Similarly, the TCPA "do[es] not impose liability for receiving a calling list that contains names and numbers," or for making introductions or receiving emails and a test call. *Id.* Such allegations do not constitute any right to, or actual control over, the manner or means of the calls, nor do they create any principal-agent relationship. Plaintiffs' allegations simply fail to show the level of control required to hold an individual vicariously liable for TCPA violations. *Compare Covington & Burling*, 2003 WL 21384825, at *6-7; *Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898-99.

## II.     Plaintiffs Failed to State a Do Not Call Claim Against Dr. Leininger.

To state a Do Not Call claim against Dr. Leininger, plaintiffs must allege that Dr. Leininger made or "cause[d] to made any telephone solicitation to any residential subscriber in this state who has given notice to the attorney general, in accordance with the rules promulgated pursuant to section 407.1101 of such subscriber's objection to receiving telephone solicitations." Mo. Rev. Stat. § 407.1098. Dr. Leininger did not make any of the calls, and he had no right to control and did not control the manner or means associated with making the calls. Thus, even assuming the truth of the allegations in the complaint, Dr. Leininger cannot be held liable for the

7

alleged Do Not Call violations for the same reasons he cannot be held liable for the alleged TCPA violations.

**III.       Plaintiffs' Conclusory Group Pleading Fails to Salvage the Complaint.**

Plaintiffs' conclusory allegations lumping Dr. Leininger together with the other eleven defendants do not and cannot save plaintiffs' claims. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002); *see also In re Sony PS3 Other OS Litig.,* 828 F. Supp. 2d 1125, 1128 (N.D. Cal. 2011) ("legal conclusions are not accepted as true and '[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice'") (quoting *Iqbal,* 556 U.S. at 678).

Likewise, where a complaint involves multiple parties and claims, plaintiffs must clearly explain which defendant or defendants are alleged to have committed which act and which wrong. *See Wong v. Bann-Cor Mortg.*, No. 10-cv-1038, 2011 WL 2314198, at *12 (W.D. Mo. June 9, 2011) ("lumping [] all defendants together into one category results in the reader being unable to determine the exact theory of liability as to each separate defendant"). "Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F.

8

App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). If the complaint "simply lumps the Defendants together despite that they are separate and distinct legal entities," so that it fails to allege which party's conduct caused the purported violations, the defendants "do not have fair notice of the precise nature of the violation that is claimed against them." *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1374-75 (S.D. Fla. 2011). "This lumping technique creates confusion and make[s] the analysis of the complaint unnecessarily burdensome, and results in . . . making accusations that are just not accurate." *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group, Ltd.*, No. 05-60080-CIV, 2011 WL 1233126, at *2 (S.D. Fla. Mar. 30, 2011) (internal quotations omitted). Moreover, this pleading technique "does not adequately explain under what theory of liability" the plaintiffs are proceeding with respect to each defendant, and creates a ground to dismiss the complaint. *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL 5436553, at *6-7 (S.D. Fla. Sept. 27, 2013) (granting motion to dismiss TCPA claim).

Plaintiffs' allegations lumping "defendants" together—such as "each Defendant materially and substantively contributed to the creation and making of the telemarketing campaign that is the subject of this lawsuit," and "Defendants each participated in this marketing scheme with full knowledge that the telephone calls that were made would be recorded ahead of time and played when recipients or their voice mail picked up the phone"— are mere "labels and conclusions" under *Twombly*, and constitute improper group pleading. (ECF No. 4 at ¶¶ 32, 36.) Plaintiffs allege that defendants are legally distinct entities and individuals, yet nevertheless improperly lump all "defendants" together in each cause of action. (ECF No. 4 at ¶¶ 32, 36, 37, 61, 65.) The complaint itself alleges that only ccAdvertising and Joseph initiated the calls, yet plaintiffs nevertheless purport to allege two causes of action against all "defendants," lumped

9

together.  (ECF No. 4 at ¶¶ 32, 36, 37, 57, 61, 65.)  As set forth above, however, the complaint lacks specific factual allegations of agency or vicarious liability as to Dr. Leininger.  And, allegations like "each Defendant materially and substantively contributed to the creation and making of the telemarketing campaign that is the subject of this lawsuit" are, in addition to being irrelevant, conclusory and do not come close to meeting *Twombly's* specific pleading requirements.  Thus, plaintiffs' group pleading does not save their claims.

## IV.     The Court Should Dismiss Dr. Leininger Without Leave to Amend.

The Court should dismiss the complaint without leave to amend because any amendment would be futile.  "Leave to amend should be denied if the proposed amended pleading would be futile."  *Wiles*, 280 F.3d at 871 (affirming denial of plaintiff's motion for leave to amend complaint because amendment was futile).  "An amendment is futile if 'the amended [pleading] could not withstand a motion to dismiss pursuant to Rule 12.'"  *Lexington Ins. Co. v. S&N Display Fireworks, Inc.*, No. 1:11-cv-40, 2011 WL 5330744, at *2 (E.D. Mo. Nov. 7, 2011) (denying motion for leave to amend as futile) (quoting *Bakhtiari v. Beyer*, No. 4:06-cv-01489, 2008 WL 3200820, at *1 (E.D. Mo. 2008) (denying motion for leave to amend as futile)).

Here, plaintiffs filed their initial complaint in state court on October 3, 2012, and thereafter conducted comprehensive written and oral discovery from Griffin, Veritas, ccAdvertising, and Joseph.  Over the last fifteen months – and as their amended complaint confirms – plaintiffs learned that ccAdvertising made the calls and controlled the manner and means associated with making the calls.  (ECF No. 4 at ¶¶ 29, 33, 38, 41, 44, 48-50, 56-57, 64.) Although they discovered Dr. Leininger during discovery, plaintiffs have unearthed no facts showing that Dr. Leininger could be liable for the calls or else plaintiffs would have included

DB04/1001663.0002/10405442.2

those facts.  Thus, any amendment as to Dr. Leininger would be futile, and would not withstand a Rule 12 motion.  Accordingly, the Court should dismiss Dr. Leininger without leave to amend.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Dr. Leininger with prejudice.

Dated:  February 14, 2014

Respectfully submitted,

**VENABLE LLP**

/s/ Ari N. Rothman
Ari N. Rothman (# 481334DC)
Ronald M. Jacobs, *pro hac vice*
Molly T. Cusson, *pro hac vice*
575 7th Street, NW
Washington, DC  20004
Telephone:  (202) 344-4000
Facsimile:  (202) 344-8300
anrothman@venable.com
rmjacobs@venable.com
mtcusson@venable.com

and

**STINSON LEONARD STREET LLP**

Cicely I. Lubben #53897
Kimberly M. Steuterman #59609
Stinson Leonard Street LLP
cicely.lubben@stinsonleonard.com
kimberly.steuterman@stinsonleonard.com
7700 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
Telephone:  (314) 863-0800
Facsimile:  (314) 863-9388

*Attorneys for Defendant*
*James R. Leininger*

11

## **CERTIFICATE OF SERVICE**

This is to certify that on this 14th day of February, 2014 this document was electronically filed via the Court's CM/ECF system and served on all counsel of record who will receive a notification of such filing by email.

/s/ Ari N. Rothman
*Counsel for Defendant James R. Leininger*

DB04/1001663.0002/10405442.2