IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RON GOLAN and DORIT GOLAN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VERITAS ENTERTAINMENT, LLC, *et al.*,

Defendants.

Case No. 4:14-cv-00069-ERW

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS TO SECOND AMENDED COMPLAINT AND TO STAY FURTHER CERTIFICATION BRIEFING**

Plaintiffs Ron Golan and Dorit Golan state the following in support of Plaintiffs' Motion for Class Certification as to Second Amended Complaint and to Stay Further Certification Briefing.

1. Plaintiffs, under Federal Rule of Civil Procedure 23, ask this Court certify as a class action their case brought under the Telephone Consumer Protection Act of 1991, 47 U.S.C. §§ 227, *et seq.*, and 47 C.F.R. § 64.1200(a), promulgated thereunder (hereinafter referred to collectively as "TCPA" unless otherwise indicated) (Count I), and Missouri's Do Not Call Law, Mo. Rev. Stat. §§ 407.1095-407.1110 (Count II), against Defendants (a) Veritas Entertainment, LLC, (b) Veritas Marketing Group, LLC, (c) Freeeats.com, Inc., d/b/a ccAdvertising, (d) AIC Communications, LLC, d/b/a ccAdvertising, (e) Gabriel S. Joseph, III, (f) Stephen Wayne Griffin, (g) Mission City Management, Inc., (h) Courage 2012, LLC, (i) James R. Leininger, (j) Sixdi, Inc., d/b/a Sixdi, (k) Bob Brewer, and (l) Michael Dale Huckabee a/k/a Mike Huckabee.

1

2. This case involves approximately 4 million unauthorized telephone calls using the recorded voice of Mike Huckabee to encourage persons to go see a movie, "Last Ounce of Courage."

3. Plaintiffs seek certification for the following Class and Sub-Class of similarly situated persons:

<u>Class (for Count I under the TCPA)</u>

All persons within the United States to whom Defendants (or some person on Defendants' behalf), within four years of October 3, 2012, initiated one or more telephone calls to such persons' residential telephone lines using the recorded voice of Mike Huckabee to deliver a message as part of the above-mentioned campaign regarding the movie Last Ounce of Courage.

<u>Sub-Class (for Count II under Missouri's Do Not Call Law)</u>

All Missouri residential subscribers registered on Missouri's No Call List who received, within any twelve-month period after January 1, 2012, more than one "telephone solicitation" (as defined by Missouri Revised Statutes § 407.1095(3)) by or on behalf of Defendants, using the recorded voice of Mike Huckabee as part of a campaign promoting Last Ounce of Courage.

4. Plaintiffs further requests that the Court appoint Plaintiffs Ron and Dorit Golan as class representatives and Schultz & Associates LLP as class counsel.

5. Plaintiffs are filing this motion at this time, contemporaneously with their motion for leave to file the second amended complaint, in an abundance of caution so as to avoid any attempt by Defendants to "pick off" Plaintiffs through an offer of judgment or individual settlement offer, as suggested by some court decisions. *See , e.g.*, *Warren v. Sessoms*, 676 F.3d 365, 372 (4th Cir. 2012); *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). Magistrate Judge Terry Adelman recently rejected a pick-off attempt, but cautioned that "in future cases, putative class action plaintiffs would be wise to immediately file such motions [for class certification] to protect the class from

similar motions to dismiss based on offers of judgment." *March v. Medicredit, Inc.*, No. 4:13CV1210 TIA, 2013 U.S. Dist. LEXIS 171126, at **10-11 (E.D. Mo. Dec. 4, 2013)

6.      Because Plaintiffs have not been able to take discovery since this case was removed, and have taken no discovery from most of the Defendants, Plaintiffs intend to file a revised motion or memorandum of law in support of this motion at a later date.

7.      For purposes of judicial economy, and fairness to all parties, Plaintiffs request that the Court stay the briefing on their instant motion.

**The Last Ounce of Courage advertising campaign.**

8.      Veritas Entertainment helped produce "Last Ounce of Courage," a movie that opened nationwide in at least 1,400 theatres on or about September 14, 2012, and played at the Wehrenberg Chesterfield Galaxy 14 theatre in Chesterfield, Missouri. (ccAdvertising000335.[1])

9.      Last Ounce of Courage was initially owned by Eastern Gate Films, L.L.C. (Eastern Gate), which had started making the movie and then asked Veritas Entertainment to come alongside and fix the film. (Griffin Dep. at 12-13.)

10.     Veritas Entertainment provided capital to fix the film in exchange for an equity interest in Last Ounce of Courage. (Griffin Dep. at 12-13.)

11.     After investing money into the film, Griffin and his associated entities owned a 49 percent interest in Last Ounce of Courage. (Griffin Dep. at 13.)

12.     Mission City Management made an investment of $10,000,000 to market Last Ounce of Courage. (Griffin Dep. at 15.)

---

[1] Parenthetical citations are to documents obtain through discovery to Veritas Marketing and Veritas Entertainment, including the deposition of Stephen Griffin on September 4, 2013, and documents produced by Freeeats.com, Inc., d/b/a ccAdvertising in conjunction with the August 29, 2013 deposition of Gabriel Joseph resulting from the Amended Notice of Deposition and corresponding subpoena filed on August 21, 2013. The Golans are attaching their supporting documents to this motion.

13. In 2012, a new company—Courage 2012, LLC—was formed, which along with Mission City Management and Veritas Entertainment owned the film. (Griffin Dep. at 15.)

14. The only movie Veritas Marketing ever marketed was Last Ounce of Courage. (Griffin Dep. at 9.)

15. In 2012, Leininger (also referred to as "Dr. Jim" or "Dr. L.") introduced Griffin of Veritas Marketing and Veritas Entertainment to Gabe Joseph and ccAdvertising, who subsequently made a Power Point pitch, which included the use of telemarketing, to Griffin about how to promote the movie effectively. (Griffin Dep. at 17-18.)

16. Griffin and Joseph then engaged in a series of discussions about a telemarketing campaign to promote Last Ounce of Courage, with Griffin acting on behalf of both Veritas Entertainment and Veritas Marketing.

17. Dr. Jim also introduced Griffin to radio talk show host and former Arkansas Governor, Mike Huckabee, and, in June or July 2012, Griffin went to Florida to screen Last Ounce of Courage to Huckabee at Huckabee's home, with Dr. Jim present. (Griffin Dep. at 118-20.)

18. Defendants worked in concert to design and implement a telephone advertising campaign to promote Last Ounce of Courage, i.e., each Defendant materially and substantively contributed to the creation and making of the telemarketing campaign that is the subject of this lawsuit.

19. In communicating by email to Griffin, Joseph carbon copied Dr. Jim, noting, "Dr. Jim can engage as needed," and upon information and belief, this

statement was true, because Dr. Jim was an integral part of the telemarketing that is the subject of this case, and had the power and interest to control this telemarketing. (ccAdvertising000392- ccAdvertising000393.)

20. In email exchanges between Griffin and Joseph, Griffin often identified himself as the "President & CEO" of Veritas Entertainment and used email address [sgriffin@veritashq.com](sgriffin@veritashq.com), with "hq" standing for "headquarters." (Griffin Dep. at 60.)

21. The advertising campaign for Last Ounce of Courage included approximately 4 million telephone calls to residential telephone numbers through many states in the United States and "Email to Text (ETT) Messages" to 30 million cell phones. (ccAdvertising000325.)

22. Defendants each participated in this marketing scheme with full knowledge that the telephone calls that were made would be recorded ahead of time and played when recipients or their voice mail picked up the phone and each also actively participated in developing the ruse that the calls would appear to be a survey as to whether the call recipients had traditional American values, with the marketing ploy to suggest that, if the recipients believed in freedom and liberty, they would enjoy Last Ounce of Courage.

23. For example, Joseph referred to the telephone calls as "Artificial Intelligence Call" or "AIC" calls: the technology functioned "like a decision tree" or, in the words of Joseph, a "logic tree," in that the recipient's yes or no responses to questions would dictate the next prerecorded question. (Joseph Dep. at 60-61; ccAdvertising000325.)

24. Griffin was initially concerned with that cost of a large-scale telephone-call campaign, informing Joseph in an August 31, 2012 email, "[t]he money is just not there" and "the only way I know to pay for this is to go back to Dr. L." (ccAdvertising000390.)

25. Griffin was more concerned with getting viewers to see Last Ounce of Courage than gathering information about them, as evidenced by the following in his August 31 email to Joseph: "I want people to go see the movie your [sic] right we only have two weeks. Getting a lot of info about people with a call to see the movie does not help me at this point." (ccAdvertising000390.)

26. For the Last Ounce of Courage AIC calls, ccAdvertising prepared the initial suggested script, including the following segments, among others:

1. HELLO THIS IS GOVERNOR MIKE HUCKABEE, WITH A 45-SECOND SURVEY. DO YOU BELIEVE IN AMERICAN FREEDOM AND LIBERTY?

2. THIS SURVEY IS ABOUT AMERICAN FREEDOM AND LIBERTY. EVERY WEEKDAY, I AM ON THE RADIO TALKING ABOUT LIBERTY, FREEDOM AND VALUES. I INVITE YOU TO LISTEN TO THE MIKE HUCKABEE RADIO SHOW IN YOUR AREA TO HEAR MORE. ARE YOU, LIKE ME CONCERNED THAT IN THE LAST 10-YEARS AMERICANS HAVE LOST SOME OF THEIR RIGHTS AND RELIGIOUS FREEDOM?

3. DO YOU AGREE THAT TRADITIONAL AMERICAN VALUES ARE UNDER ATTACK IN MAIN STREAM MEDIA AND BY OUR GOVERNMENT?

4. WOULD YOU LIKE, ME MIKE HUCKABEE, LIKE TO SEE HOLLYWOOD RESPECT AND PROMOTE TRADITIONAL AMERICAN VALUES?

5. I AM AN ENTHUSIASTIC SUPPORTER OF A NEW MOVIE CALLED LAST OUNCE OF COURAGE. IT IS A FILM ABOUT FAITH, FREEDOM, AND TAKING A STAND FOR AMERICAN VALUES. MAY I TELL YOU MORE ABOUT WHY I RECOMMEND THAT YOU AND ALL AMERICANS SEE THE MOVIE LAST OUNCE OF COURAGE? (PLEASE NOTE THAT ONLY "YES" RESPONSES GO TO SEGMENT 6. ALL OTHER RESPONSES GO TO SEGMENT 8)

6.

THANK YOU FOR YOUR INTEREST. LAST OUNCE OF COURAGE OPENS IN THEATERS ON FRIDAY, SEPTEMBER 14TH. LAST OUNCE OF COURAGE WILL INSPIRE YOU AND YOUR LOVED ONES TO CELEBRATE OUR NATION AND THE SACRIFICES MADE TO PROTECT OUR LIBERTIES. IT IS A GREAT STORY ABOUT TAKING A STAND FOR RELIGIOUS FREEDOM. THE FILM IS A TIMELY REMINDER OF ALL THAT IS WORTH DEFENDING IN OUR NATION. EXPERIENCE THE LAST OUNCE OF COURAGE TRAILER AND SEE AUDIENCE REACTIONS AT WWW DOT LAST OUNCE THE MOVIE DOT COM, THAT'S LAST OUNCE THE MOVIE DOT COM. WOULD YOU LIKE TO HEAR THIS INFORMATION AGAIN? (PLEASE NOTE THAT ONLY "YES" RESPONSES GO TO SEGMENT 7. ALL OTHER RESPONSES GO TO SEGMENT 8)

7.

LAST OUNCE OF COURAGE OPENS IN THEATERS ON FRIDAY, SEPTEMBER 14TH. LAST OUNCE OF COURAGE WILL INSPIRE YOU AND YOUR LOVED ONES TO CELEBRATE OUR NATION AND THE SACRIFICES MADE TO PROTECT OUR LIBERTIES. IT IS A GREAT STORY ABOUT TAKING A STAND FOR RELIGIOUS FREEDOM. THE FILM IS A TIMELY REMINDER OF ALL THAT IS WORTH DEFENDING IN OUR NATION. EXPERIENCE THE LAST OUNCE OF COURAGE TRAILER AND SEE AUDIENCE REACTIONS AT WWW DOT LAST OUNCE THE MOVIE DOT COM, THAT'S LAST OUNCE THE MOVIE DOT COM

8.

THANK YOU FOR YOUR ANSWERS SO FAR. I HAVE A JUST FEW MORE QUESTIONS FOR DEMOGRAPHIC PURPOSES. DO YOU OWN A SMART PHONE?

\* \* \*

11.

THIS IS GOVERNOR MIKE HUCKABEE. THANK YOU FOR YOU TIME AND VIEWS. I INVITE YOU TO LISTEN TO MY RADIO SHOW, EVERY WEEKDAY ON A STATION IN YOUR AREA AND TO SEE THE MOVIE, LAST OUNCE OF COURAGE IN THEATERS ON SEPTEMBER 14TH. THIS SURVEY WAS SPONSORED BY LAST OUNCE OF COURAGE. FOR MORE INFORMATION PLEASE VISIT LAST OUNCE THE MOVIE DOT COM OR CALL 419/777-8263. GOODBYE.

14.

THIS IS GOVERNOR MIKE HUCKABEE. THANK YOU FOR YOU TIME AND VIEWS. I INVITE YOU TO LISTEN TO MY RADIO SHOW, EVERY WEEKDAY ON A STATION IN YOUR AREA AND TO SEE THE MOVIE, LAST OUNCE OF COURAGE IN THEATERS ON SEPTEMBER 14TH. THIS SURVEY WAS SPONSORED BY LAST OUNCE OF COURAGE. FOR MORE INFORMATION PLEASE VISIT LAST OUNCE THE MOVIE DOT COM OR CALL 419/777-8263. GOODBYE. (PLAYS ON HANG-UP IF NO RESPONSE IS GIVEN)

15.

THIS WAS A PUBLIC SURVEY CALL. WE MAY CALL BACK LATER. (PLAYS IF WE GET AN ANSWERING DEVICE)

(ccAdvertising000063-ccAdvertising000066.)

27. On September 4, 2012, Joseph emailed the above-noted script draft to Griffin and Brewer and asked them to review the script and get back with any comments ASAP. (ccAdvertising000062.)

28. Huckabee recorded the script on September 4, 2012, using his own voice, and he knew that this recording would be played for telemarketing purposes during telephone calls to consumers. (ccAdvertising000364, ccAdvertising000369.)

29. Promoting Huckabee's radio show was not the primary purpose of the Last Ounce of Courage AIC campaign, as demonstrated by an August 31, 2012 email from Joseph to Griffin—prior to securing Huckabee's commitment to participate—in which Joseph stated, "[w]e need to start our 'Artificial Intelligence Call' (AIC) calls with our without a Celebrity Voice." (ccAdvertising000387.)

30. On September 5, 2012, less than two hours after learning that Huckabee had recorded the script, Griffin sent Joseph an email stating "i need review the call," and upon information and belief, Griffin reviewed it shortly thereafter and had the power to exert control over the content of the message and other aspects of the call. (ccAdvertising000364; Griffin Dep. at 98.)

31. On September 5, 2012, Joseph sent Brewer an email requesting the following information from Brewer for targeting: cities and states where the most theatres would be showing the movie, each in descending order. (ccAdvertising000352- ccAdvertising000353.)

32. On September 5, 2012, Brewer, using bob.brewer@sixdi.com, emailed Joseph, stating "Let's go. The Huckabee AIC call is approved." (ccAdvertising000353.)

33. On September 6, 2012, Joseph sent Dr. Jim a test call of Huckabee call for Last Ounce of Courage. (ccAdvertising000325.)

34. Dr. Jim liked the Huckabee call but wanted the script to be shorter, to go from Segment 2 to Segment 5, and to skip the questions in between, because Dr. Jim "was anxious to get people to the movie permission segment." (ccAdvertising000354.)

35. Joseph made the changes Dr. Jim directed. (ccAdvertising000354.)

36. In a September 7, 2012 email from ccAdvertising to Griffin and Brewer, ccAdvertising provided Griffin and Brewer with a login and password for a secure information data directory so that they could access summary reports as to the Huckabee calls that had been made, including (a) the percentage of homes reaching live respondents or answering devices, (b) client call status, showing how each call was registered by major category, (c) client segment status, showing by percentage levels how each live respondent that answered questions answered each question, and (d) client response rate, showing composite percentages of how many "Yes" or "No" questions were answered and by how many respondents. (VERITAS000103-VERITAS000104.)

37. Neither Griffin nor anyone from Veritas Marketing ever logged on to ccAdvertising's secure data directory. (Griffin Dep. at 116.)

38. Initially, ccAdvertising invoiced SixDi for its work on the Last Ounce of Courage campaign. (ccadvertising000390.)

39. Later, ccAdvertising's invoices, including Invoice # 4065, were sent to Griffin's attention and identified "Veritas Entertainment" in the bill-to section. (ccAdvertising000325, ccAdvertising000392.)

9

40. ccAdvertising charged and was paid $248,500 by Veritas Entertainment or Veritas Marketing for the 4 million AIC calls to residential telephone numbers and $30,000 for the 30 million Email to Text Messages to cell phones, receiving $100,000 wire transfers on September 6 or 7, 2012, and September 14, 2012, and the final $78,500 during the first week of October, 2012. (ccAdvertising000323-ccAdvertising000325, ccAdvertising000357.)

41. In a September 14, 2012 email concerning payments, Joseph requested a reply email as to when Joseph could expect the next $100,000 payment on the balance due, threatened to shut down the Huckabee AIC campaign if he did not hear from Griffin that morning, and stated, "please let me know if I need to engage Dr. Jim in this to make sure he has provided you the monies you need to pay ccAdvertising." (ccAdvertising000340.)

42. On September 10 and 12, 2012, using telephone number 202-769-1087, ccAdvertising initiated telephone calls to the Golans' residential telephone line, using Huckabee's pre-recorded to deliver a message to advertise the commercial availability or quality of goods or services, i.e., to encourage the Golans to go see Last Ounce of Courage.

43. The Golans received two of the Huckabee calls, with language from Segment 15 of the above-noted script left on their answering machine.

44. The name that showed up on the Golans' caller ID corresponding to 202-769-1087 was "2012FREERSRCH," which was misleading, because these were commercial calls rather than research calls, as suggested by the use of "RSRCH."

45. After the Huckabee calls to 4 million homes were made, ccAdvertising created a "Survey Questionnaire" in which it identified one purpose for the "survey": "to identify respondents . . . who are interested in hearing more information about the movie 'Last Ounce of Courage." (ccAdvertising000213-ccAdvertising000216.)

46. According to ccAdvertising's "Survey Questionnaire," "1,018,609 live responses were detected" and regardless of whether recipients of the calls answered yes or no to Questions 1 and 2 in the script, so long as they did not hang up, they were subjected to Question 3 in which Huckabee recommended that the recipients see Last Ounce of Courage. (ccAdvertising000213, ccAdvertising000214)

47. Joseph and ccAdvertising obtained the telephone numbers called from a database purchased at least a decade ago from Axiom Corporation, which provided White Pages data in digital format. (Joseph Dep. at 21-24.)

48. None of the persons called had indicated to any defendant (or anyone else) a desire to receive telephone calls promoting Last Ounce of Courage.

**The TCPA and Missouri's Do Not Call Law.**

49. The TCPA prohibits certain pre-recorded calls. Section 227 of the TCPA, under its "[r]estrictions on use of automated telephone equipment," provides that it shall be unlawful for any person "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B).

50. Similarly, Section 407.1107.3(1)-(3) of Missouri's Do Not Call Law allows any person who has received more than one telephone solicitation within any twelve-month period by or on behalf of the same person or entity in violation of Missouri's Do Not Call Law to bring an action to enjoin such violation, to receive up to $5,000 in damages for each such knowing violation, or both. Mo. Rev. Stat. § 407.1107.3(1)-(3).

51. Class certification is normal in litigation under § 227, because the main questions are common to all recipients. *See, e.g., Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013), *cert. denied* 2014 U.S. LEXIS 1528 (U.S. Feb. 24, 2014). For this reason, numerous TCPA class actions have been certified.[2] Likewise, the main questions that arise in cases under Missouri's Do Not Call Law are also common to all recipients. Similar to *Holtzman*, the main questions in this case (see below) are common to the class members.

52. All prerequisites of Rule 23 have been met.

53. <u>Numerosity</u>. Defendants Veritas Entertainment and Veritas Marketing admit that "a minimum of 8,760 people received telephone calls to residential numbers

---

[2] *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943 (9th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, No. 2010 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011); *Mitchem v. Ill. Collection Serv., Inc.*, 271 F.R.D. 617, 619 (N.D. Ill. 2011); *Lozano v. 20th Century Fox Film Corp.*, No. 09-6344 (N.D. Ill. Nov. 17, 2012); *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill., May 27, 2008); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 804 (N.D. Ill. 2008); *Travel 100 Group, Inc. v. Empire Cooler Serv., Inc.*, No. 03 CH 14510, 2004 WL 3105679 (Cir. Ct. Cook Cty., Ill. Oct. 19, 2004); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. 2006); *Display S., Inc. v. Express Computer Supply, Inc.*, 961 So. 2d 451 (La. App. 1st Cir. 2007); *Display S., Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); Core Funding Group, LLC v. Young, 792 N.E.2d 547 (Ind. App. 2003); *Nicholson v. Hooters of Augusta, Inc.*, 537 S.E.2d 468 (Ga. Ct. App. 2000); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012).

that promoted the movie Last Ounce of Courage" and other discovery revealed that approximately 4 million calls were initiated or made as part of the telephone campaign. "Class certifications have been upheld where the class is composed of 100 or even less." *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 168 (Mo. Ct. App. W.D. 2006) (citing cases in which 18, 19, 25, 51, 72, 92 class members were sufficient). Numerosity is satisfied and joinder is impracticable given the huge number of class members. *See* Fed. R. Civ. P. 23(a)(1).

54. <u>Common Questions Predominate</u>. There exist common questions of law or fact, which predominate over any individual questions, such as

a. whether Defendants initiated telephone calls using an artificial or prerecorded voice to deliver a message to residential telephone lines;

b. whether Defendants calls were made for commercial purposes;

c. whether Defendants' calls constituted an "unsolicited advertisement" under the TCPA;

d. whether Defendants willfully or knowingly violated the TCPA;

e. whether Defendants knowingly violated Missouri's Do Not Call Law;

f. whether Defendants' calls constituted a "telephone solicitation" under Missouri's Do Not Call Law and the TCPA;

g. whether the Golans and the Class and Subclass are entitled to damages, and, if so, how much; and

h. whether the Golans and the Class and Subclass are entitled to injunctive relief.

The Class and Sub-Class definitions ensures that the class members have identical claims, both factually and legally, and that there are common defenses available to Defendants for each class member. *See* Fed. R. Civ. P. 23(a)(2)-(3).

55. Typicality. Similarly, Plaintiffs' claims are typical of the other class members. All of the claims are based upon a substantially identical set of facts and circumstances. *See* Fed. R. Civ. P. 23(a)(3). Plaintiffs, like the other class members, received the Huckabee Calls on their home phones after ccAdvertising obtained their number from some party other than Plaintiffs, directly, as to the subject matter of the telemarketing call. The prerecorded voice message was based on a script recorded by Huckabee.

56. Adequacy. Plaintiffs and their counsel will fairly and adequately protect the interests of the class. Plaintiffs' interests in this litigation are aligned with those of the class, and they have hired counsel experienced in class action and consumer litigation. *See* Fed. R. Civ. P. 23(a)(4). Plaintiffs' counsel have filed at least a dozen class action lawsuits since January 2012, settled some of them, and one two class actions on appeal to the Eighth Circuit. Plaintiffs' counsel have also successfully defended consumer class actions in state and federal courts. *See, e.g.*, *Hargis v. JLB Corp.*, 357 S.W.3d 574 (Mo. banc 2011); *Sakalowski v. Metron Servs., Inc.*, No. 4:10-CV-02052 AGF (E.D.Mo. 2011). Plaintiffs' counsel, each of whom are former judicial law clerks, have achieved Martindale-Hubbell® Peer Review Ratings™ of AV® Preeminent™.

57. Defendants' Actions Applicable Generally. Defendants have acted or failed to act on grounds generally applicable to each class member, and it is these generalized actions around which this case revolves. Defendants caused each class member to be called on their residential telephones using an autodialer and/or artificial/prerecorded

voice message and for the Sub-Class called Missourians at least twice in twelve months despite their no-call-list registrations. Class-wide injunctive relief under Section 227(b)(3)(A) of the TCPA, and under Section 407.1107.3(2) and (3) of Missouri's Do Not Call Law, along with corresponding declaratory relief, is therefore appropriate. *See* Mo. Fed. R. Civ. P. 23(b)(2). All class members would benefit from the cessation of these annoying calls. *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012); *Meyer*, 696 F.3d 943.

58. <u>Superiority</u>. It is desirable to have this case litigated as a class action because the class mechanism is superior to individual actions. Plaintiffs are not aware of any other cases alleging similar facts against Defendants, likely because most other members of the class are not aware that their rights have been violated. Further, a class action is necessary to determine that Defendants' conduct is a violation of law and to redress the class members' statutory damages. Fed. R. Civ. P. 23(b)(3). The issue of whether Defendants' messages complied with the TCPA and Missouri's Do Not Call Law predominates over any individual issues that may arise.

59. Because the prerequisites of Rule 23(a)-(b) are satisfied, this Court should certify the two classes. Plaintiffs request that the Court permit a supplemental motion or memorandum after further discovery is taken from the new defendants.

WHEREFORE, Plaintiffs Ron and Dorit Golan requests that this Court certify this case as a class action as to the Class and Sub-Class defined herein, appoint them as class representatives, appoint Ronald J. Eisenberg and Robert Schultz of Schultz & Associates LLP as class counsel, stay further class-certification briefing, and grant them any additional relief deemed proper.

SCHULTZ & ASSOCIATES LLP

By: /s/ Ronald J. Eisenberg
Robert Schultz, #35329MO
Ronald J. Eisenberg, #48674MO
640 Cepi Drive, Suite A
Chesterfield, MO  63005
636-537-4645
Fax:  636-537-2599
reisenberg@sl-lawyers.com
rschultz@sl-lawyers.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 1, 2014, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all registered counsel of record.

/s/ Ronald J. Eisenberg