UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RON GOLAN, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV00069 ERW |
| | ) | |
| VERITAS ENTERTAINMENT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Mission City Management, Inc. and Courage 2012, LLC's Motion to Dismiss Second Amended Complaint [ECF No. 86], Defendant James R. Leininger's Motion to Dismiss Second Amended Complaint [ECF No. 88] and Defendant Michael D. Huckabee's Motion to Dismiss Second Amended Complaint [ECF No. 90].

**I.  BACKGROUND**

Plaintiffs Ron Golan and Doris Golan ("Plaintiffs") initiated this lawsuit by filing a petition in the Circuit Court of St. Louis County on October 3, 2012.  On December 4, 2013, Plaintiffs filed an amended class action petition claiming violations of the Missouri No Call List, Mo. Rev. Statute § 407.1095-407.1110, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., against Defendants Veritas Entertainment, LLC, Veritas Marketing, LLC, Freeeats.com, Inc., AIC Communications, LLC, Joseph S. Gabriel, III, Mission City Management, LLC, Courage 2012, LLC, James R. Leininger, Sixdi, Inc., Bob Brewer, and Michael Dale Huckabee.  On January 15, 2014, Defendants removed the action to the United States District Court for the Eastern District of Missouri.  The Court dismissed Plaintiffs'

1

Amended Class Action Petition for lack of Article III standing.  On June 8, 2015, the Eighth Circuit Court of Appeals reversed this Court's dismissal and remanded for further proceedings.  On August 6, 2015, Plaintiffs filed a Second Amended Class Action Complaint asserting only TCPA claims.  Defendants Mission City Management, Inc. ("Mission City"), Courage 2012, LLC ("Courage 2012"), James R. Leininger ("Leininger"), and Michael Dale Huckabee ("Huckabee") filed the pending Motions to Dismiss for failure to allege facts to establish direct or vicarious liability under the TCPA.  For the purposes of these Motions, the Court accepts as true the following facts alleged in Plaintiff's complaint.  *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir. 2010).

"Last Ounce of Courage" is a movie that opened nationwide on September 14, 2012.  Veritas Entertainment, LLC ("Veritas Entertainment") helped produce the movie which was originally owned by Eastern Gate Films, LLC.  Veritas Entertainment provided capital in exchange for an equity interest in the movie.  Stephen Wayne Griffin ("Griffin") is the president/CEO of Veritas Entertainment and Veritas Marketing, LLC ("Veritas Marketing").  Griffin and his associated entities came to own a 49 percent interest in the movie.  Mission City also made an investment of $10,000,000 to market the movie.  In 2012, Courage 2012 was formed as a company and took ownership of the film along with Mission City and Veritas Entertainment.  This movie was the only movie Veritas Marketing ever marketed.

Leininger is a manager of Mission City who introduced Griffin to Gabriel S. Joseph, III (Joseph), the sole officer and director of FreeEats.com, Inc. which does business as ccAdvertising.  He is also the sole member of AIC Communications, LLC which does business as ccAdvertising as well.  Joseph made a Power Point pitch to Griffin about how to promote the movie effectively which included the use of telemarketing.  In emails to Griffin, Joseph carbon

copied Leininger, and stated "Dr. Jim can engage as needed."  Leininger also introduced Griffin to Huckabee, a radio talk show host and former governor of Arkansas.  In June or July 2012, Griffin and Leininger screened "Last Ounce of Courage" at Huckabee's home in Florida.

The advertising campaign for the movie included approximately four million telephone calls to residential telephone numbers throughout the United States and "Email to Text (ETT) Messages" to thirty million cell phones.  Defendants participated in this scheme with full knowledge the telephone calls were prerecorded and would play when a recipient or their voicemail picked up the phone.  Defendants actively participated in developing the idea the calls would appear as surveys to recipients about traditional American values and told recipients if they believed in freedom and liberty, they would enjoy the movie.  Joseph referred to the phone calls as "Artificial Intelligence Calls" or "AIC" calls.  The technology worked like a "logic tree," according to Joseph, where a recipient's yes or no response would dictate the next prerecorded question.

ccAdvertising prepared the initial script for the telephone calls. Joseph emailed the script to Griffin and asked for him to review it and get back with any comments as soon as possible.  Huckabee was given authority to review, edit, and make changes to the script.  On September 4, 2012, Huckabee recorded the script and made changes to it by adding large unscripted sections to the prerecorded message.  At that time, he knew this recording would be played for telemarketing purposes.  Huckabee wanted the calls to be made so his radio show would be advertised.  He helped and encouraged the phone calls to be made and did not object to them.

Leininger was given authority to, and did review and modify the contents of the calls.  He was also given authority to determine when the four million calls would be made.  Leininger exercised this authority.  On September 6, 2012, Joseph sent Leininger a test call of the

prerecorded message.  Leininger liked the call and script, but directed it to be shorter, to skip the questions between Segment 2 and Segment 5.  Leininger wanted to get people to the movie permission segment.  With these specific directions and changes, Leininger authorized the calls to be made.  Joseph implemented Leininger's changes and the calls were placed.  Leininger wanted the calls to be made because he had invested in the movie through his companies.

In a September 14, 2012, email concerning payment for the telemarketing campaign, Joseph threatened to shut down the marketing campaign stating "please let me know if I need to engage Dr. Jim in this to make sure he has provided you the monies you need to pay ccAdvertising."

Since 2010, Plaintiffs have been accountholders of the residential telephone number (636) 812-2121.  This number has been registered on the federal Do Not Call List since March 7, 2012.  Plaintiffs did not consent to receive any phone calls from Defendants.  On September 10 and 12, 2012, ccAdvertising initiated calls to Plaintiffs' residential phone number using Huckabee's pre-recorded voice to deliver a message encouraging Plaintiffs to see the movie.  Plaintiffs received two of these phone calls.  The phone number calling Plaintiffs was 202-769-1087 which appeared as "2012FREERSRCH" on their caller ID.  Plaintiffs did not state a desire to receive these calls.

Plaintiffs allege the named defendants violated section 227(b)(1)(B) of the TCPA, which, with certain exceptions, prohibits persons from initiating calls to residential telephone lines using a prerecorded voice to deliver a message without the called party's prior express consent.  Defendants, in their separate Motions to Dismiss, assert the Amended Complaint fails to state a claim, pursuant to FRCP 12(b)(6), because it does not allege facts to establish direct or vicarious liability.

## II.      STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010). Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual

5

allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

**III.     DISCUSSION**

The moving Defendants contend Plaintiffs fail to allege sufficient facts showing Defendants either initiated the calls, or are vicariously liable for ccAdvertising's calls.  They contend the Amended Complaint fails to plead sufficient facts to support Plaintiffs' apparent authority agency, ratification, and impermissible delegation of duty theories, and more specifically, they argue the Complaint fails to sufficiently plead they controlled the manner and means of the calls.  Defendants claim editing a script and investing in a movie do not create vicarious liability.

In their responses in opposition to the Motions to Dismiss, Plaintiffs claim the moving defendants invested in the project, directed what the advertisement would say and when it was to be played, controlled the finances of the project, encouraged the advertisement of the movie through the telemarketing, encouraged Huckabee to participate, and reviewed and edited the script for the telephone calls.  Plaintiffs also assert Defendants ratified ccAdvertising's conduct.

The TCPA prohibits the initiation of a telephone call to a residential telephone line which uses a prerecorded voice without prior consent from the call receiver, with some exceptions.  47 U.S.C. § 227(b)(1)(B).  The Federal Communications Commission ("FCC") is the agency granted law-making, law-enforcing, and interpretative authority over the TCPA.  *See Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984); 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2), 227(g)(3); 22 FCC Rcd. 19896 (Nov. 9, 2007); 20 FCC Rcd. 18272 (Nov. 23, 2005).  On May 9, 2013, upon referral of a case by the Sixth Circuit, the FCC issued a Declaratory Ruling on the issue of "on behalf of " liability under section 227(c) of the

6

TCPA.  *In the Matter of the Joint Petition filed by Dish Network, LLC, et al.*, 28 F.C.C.R. 6574, 2013 WL 1934349 (F.C.C. May 9, 2013).  In this ruling, the FCC also considered vicarious liability of sellers for violations of 47 U.S.C. § 227(b).  *Id*.  Thus, this Court is able to consider the pending motions with the benefit of the FCC's guidance.  The statute is silent on many of the terms and conclusions made in the FCC's guidance and the Court believes the FCC guidance vastly expands the wording of 47 U.S.C. § 227.

"[A] seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA[.]" *In the Matter of the Joint Petition filed by Dish Network, LLC, et al.*, 28 F.C.C.R. at 6574.  Therefore, a seller is not directly liable for a TCPA violation unless it initiates the call.  *Id.* at 6582.  Nor is an action taken for the benefit of a seller by a third-party, without more, sufficient to trigger the liability of a seller under section 227(b).  *Id*. at 6593.  In addition to the TCPA's provision making it unlawful, absent prior express consent by the call recipient, for a person to initiate telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages, the FCC's do-not-call rules also make it unlawful for any person or entity to initiate telephone solicitations to residential telephone subscribers who have registered their telephone numbers with the national do-not-call registry.  *Id.* at 6582-83.

Nevertheless, a seller that is not directly liable may be held vicariously liable under federal common law principles of agency for violations of section 227(b) by a third-party telemarketer.  *Id.*  A formal agency relationship is not required to establish a seller's vicarious liability for the illegal acts of a third-party telemarketer; plaintiffs can also employ principles of ratification and apparent authority in pursuing TCPA claims.  *Id*. at 6586-87.  Federal common law is in accordance with the Restatement of Agency.  *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000).

"[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 830 (8th Cir. 1992) (quoting Restatement (Second) of Agency § 27 (1957)); *see also* Restatement (Third) Agency § 2.03 (apparent authority is the power held by agent or other actor to affect principal's legal relations with third parties when third party reasonably believes actor has authority to act on principal's behalf and belief is traceable to principal's manifestations); Restatement (Third) Agency § 1.03 (person manifests assent or intention through written or spoken words or other conduct).

In its Declaratory Ruling, the FCC provided illustrative examples of evidence that could demonstrate a telemarketer is a "seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations." *In the Matter of the Joint Petition filed by Dish Network, LLC, et al.*, 28 F.C.C.R. at 6592. The examples included evidence showing: 1) the seller allows the telemarketer access to information and systems that normally would be within the seller's exclusive control; 2) the ability by the telemarketer to enter consumer information into the seller's sales or customer systems; 3) the authority by the telemarketer to use the seller's trade name, trademark, and service mark; and 4) the seller approved, wrote, or reviewed the telemarketing scripts. *Id.* The FCC also opined:

> a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

8

*Id*. The FCC concluded, "At a minimum, evidence of these kinds of relationships . . . should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."

Ratification is "the affirmance by a person of a prior act that did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *BE&K Const. Co. v. N.L.R.B.*, 23 F.3d 1459, 1466 (8th Cir. 1994) (quoting *Serv. Emp. Union, Local 87 (W. Bay Maint.)*, 291 NLRB 83, 1988 WL 214072 (1988)). Affirmance is either: "(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or (b) conduct by him justifiable only if there were such an election." *BE&K Const.*, 23 F.3d at 1466 (citing section 83 of the Restatement (Second) of Agency). "An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." *Id*. (quoting § 94 of the Restatement). The Restatement (Third) of Agency defines ratification as "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority" Restatement (Third) of Agency § 4.01(1). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01(2).

  A. *Mission City and Courage 2012*

Mission City and Courage 2012 assert Plaintiffs' claims must be dismissed because their allegations do not establish direct or vicarious liability. In their Amended Complaint, Plaintiffs allege defendant ccAdvertising, operated by defendant Joseph, "obtained the telephone numbers called" and initiated the calls. Plaintiffs do not allege Mission City or Courage 2012 initiated the

9

calls. Therefore, they cannot be directly liable for the TCPA violation. The Court will consider whether the facts support a theory of vicarious liability against Mission City and Courage 2012.

To succeed against the moving defendants on their vicarious liability theory, Plaintiffs must demonstrate the initiator of the telemarketing campaign, ccAdvertising, acted as an agent of Mission City or Courage 2012. Plaintiff's Amended Complaint must allege facts showing ccAdvertising acted in a fashion so a third party could reasonably believe ccAdvertising's actions would be traceable to Mission City, Courage 2012, and Leininger. *See Thomas v. Taco Bell Corp.*, 879 F.Supp.2d 1079, 1084-85 (S.D. Cal. June 25, 2012).

Plaintiffs allege the following in their Amended Complaint in regards to Courage 2012 and Mission City. Courage 2012 is a Texas limited liability company formed in 2012, Mission City is a Texas corporation, and Leininger is a manager of Mission City. Mission City made an investment of $10,000,000 to market "Last Ounce of Courage"; and Mission City, Courage 2012 and Veritas Entertainment became owners of the film in 2012. Leininger introduced Griffin to Joseph and Huckabee, and was present at the screening of "Last Ounce of Courage" at Huckabee's home. Joseph copied Leininger on an email communication and Joseph sent Leininger a test call of the prerecorded call to review. Leininger suggested the script be shorter and go directly from Segment 2 to Segment 5 and after the changes were made, Leininger authorized the calls to be made.

Based on these allegations, the Court finds the Amended Complaint contains sufficient allegations to avoid dismissal at this stage of the case. Leininger's review, editing and approval of telemarketing scripts is persuasive evidence for Plaintiffs. *See In the Matter of the Joint Petition filed by Dish Network, LLC, et al.*, 28 F.C.C.R. at 6592.

  B. *James Leininger*

Leininger asserts the Amended Complaint must be dismissed as to claims asserted against him because it does not allege facts to establish his individual liability for a corporation's acts. Further, he argues there is no agency relationship between him and the telemarketers. Numerous district courts have held corporate actors may be individually liable for a TCPA violation where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F.Supp.3d 1046, 1060 (D. Ore. 2014) (quoting *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 3:12-CV-2257, 2014 WL 1333472 at *3 (N.D. Ohio Mar. 28, 2014)) (listing district courts around the country who have held an individual must have direct, personal participation or authorization to be liable.). Here, Plaintiffs have alleged Leininger authorized the calls to be made. Leininger was a prime participant in arranging for the script to be written, he traveled extensively to assure the script was produced and he solicited Michael Huckabee to contribute the voice addition. Defendant Leininger's motion to dismiss will be denied.

  C. *Michael Huckabee*

Huckabee also moves for dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), contending the Amended Complaint fails to state a claim against him for violation of the TCPA. Huckabee contends the Amended Complaint only alleges he recorded the call script, "using his own voice," and made edits to the script. He argues that merely serving as the "celebrity voice" of the prerecorded message, without more, is insufficient to impute liability to him. Huckabee also asserts there is no agency relationship between him and ccAdvertising.

Plaintiffs argue Huckabee changed the script, inserted advertisements for his radio show, and made the recording which was used to make the telemarking calls. They assert Huckabee

11

started as an agent and became a principal when he changed the script and inserted his advertisement for his radio show.  Further, Plaintiffs contend Huckabee is liable under a theory of ratification because he knew the material facts of the telemarketing campaign, wanted it to occur for his own benefit, and his radio show benefited.

The Amended Complaint alleges the following pertinent facts as to Huckabee.  Leininger introduced Griffin to radio talk show host and former Arkansas governor, Huckabee, and in June or July 2012, Griffin went to Huckabee's Florida home to screen "Last Ounce of Courage."  Huckabee recorded the script for the calls on September 4, 2012, using his own voice.  Huckabee added to and changed the message by adding large unscripted sections to the recording and advertisements of his radio show which personally benefitted him.  Huckabee knew the recording would be played for telemarketing purposes during telephone calls to consumers.  He wanted the calls to be made so his radio show would be advertised.

The Court agrees Huckabee's service as the "celebrity voice" of the prerecorded message and his additions to the script, without more, are insufficient to impute liability to him.  Plaintiffs' argument Huckabee's invitation for the call recipient to listen to his radio talk show provided a personal benefit to him and thus constituted an act of ratification is unpersuasive, as the FCC has determined telephone messages inviting the recipient to listen to specific broadcasts are not unsolicited advertisements, and are exempt from the TCPA's restrictions.  *See Leyse v. Clear Channel Broadcasting, Inc.*, 545 Fed. App'x 444, 448-451 (6th Cir. 2013).  The Court finds the Amended Complaint does not allege facts that, accepted as true, would make Huckabee vicariously liable for the alleged violations of the TCPA.  The Court finds the Amended Complaint fails to allege sufficient facts showing ccAdvertising acted as an agent for Huckabee

under any of Plaintiffs' theories of liability, including apparent authority or ratification.[1] Huckabee did not make any of the calls, and he did not have the authority to control the manner or means of the calls. Therefore, the Court will dismiss the claims against Huckabee.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Mission City Management, Inc. and Courage 2012, LLC's Motion to Dismiss Second Amended Complaint [ECF No. 86] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant James R. Leininger's Motion to Dismiss Second Amended Complaint [ECF No. 88] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Michael D. Huckabee's Motion to Dismiss Second Amended Complaint [ECF No. 90] is **GRANTED**.

Dated this 8th Day of March, 2016.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] Ratification requires a principal-agent relationship which is not present between Huckabee and ccAdvertising. *Thomas v. Taco Bell Corp.*, 582 Fed. App'x 678, 680 (9th Cir. 2014) (citing *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)); Restatement (Third) of Agency §§ 3.04, 4.04.