UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RON GOLAN, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV00069 ERW |
| | ) | |
| VERITAS ENTERTAINMENT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion for Class Certification [ECF No. 172] and Supplemental Motion for Class Certification [ECF No. 207].

**I.    BACKGROUND**

Plaintiffs Ron Golan and Doris Golan ("Plaintiffs") initiated this lawsuit by filing a petition in the Circuit Court of St. Louis County on October 3, 2012. On December 4, 2013, Plaintiffs filed an amended class action petition claiming violations of the Missouri No Call List, Missouri Revised Statute § 407.1095-407.1110, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, against Defendants Veritas Entertainment, LLC, Veritas Marketing, LLC, Freeeats.com, Inc., AIC Communications, LLC, Joseph S. Gabriel, III, Mission City Management, LLC, Courage 2012, LLC, James R. Leininger, Sixdi, Inc., Bob Brewer, and Michael Dale Huckabee. Defendants removed the action to this Court where Plaintiffs' Amended Class Action Petition was dismissed for lack of Article III standing. On June 8, 2015, the Eighth Circuit Court of Appeals reversed this Court's dismissal and remanded for further proceedings. Subsequent to the Eighth Circuit's ruling, Plaintiffs filed a Second Amended Class Action

1

Complaint asserting only TCPA claims. Defendants Michael Huckabee, Bob Brewer, and SixDi, Inc. have since been dismissed.

The allegations of Plaintiffs' Second Amended Complaint ("Complaint") focus on telemarketing of a movie titled "Last Ounce of Courage." Plaintiffs allege Defendants engaged in an advertising campaign for the movie which included telephone calls to approximately four million residential telephone numbers throughout the United States. Plaintiffs allege the telephone calls were prerecorded, appeared as surveys to recipients about traditional American values, and told recipients if they believed in freedom and liberty, they would enjoy the movie. As alleged in the Complaint, Defendant Michael Huckabee was the voice for the prerecorded messages. Plaintiffs allege they received two telephone calls with the prerecorded voice to their residential telephone number, which was registered on the federal Do Not Call List. Further, Plaintiffs allege they did not consent to receive these calls.

Plaintiffs assert Defendants violated section 227(b)(1)(B) of the TCPA, which, with certain exceptions, prohibits persons from initiating calls to residential telephone lines using a prerecorded voice to deliver a message without the called party's prior express consent. Plaintiffs filed the current Motions for Class Certification seeking to certify a class.

## II. STANDARD

Congress passed the TCPA in 1991, prompted by "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 744 (2012). The TCPA "bans certain practices invasive of privacy and directs the Federal Communications Commission . . . to prescribe implementing regulations." *Id.* The TCPA provides expressly for private lawsuits *(see* 47 U.S.C. 227(b)(3)) over which state and federal courts have concurrent jurisdiction. *Mims,* 132 S.Ct. at 745. It provides that a "person or entity"

may bring an action "based on a violation of this subsection or the regulations prescribed under this subsection" to enjoin such violation, recover damages, or both. 47 U.S.C. § 227(b)(3); *see also Nack v. Walburg,* 715 F.3d 680, 686–87 (8th Cir. 2013). It also permits state officials to bring an action on behalf of state residents. 47 U.S.C. § 227(e)(6)(A).

Under Rule 23(a) of the Federal Rules of Civil Procedure, a party seeking class certification must demonstrate: (1) the class is so numerous joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See Wal–Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (moving party must "affirmatively demonstrate his compliance with the Rule"). The party seeking certification also must show one of the subsections in Rule 23(b) is met.

In this case, Plaintiffs seek to certify a class under Rule 23(b)(3). Rule 23(b)(3) actions require a court to find (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005).

**III. DISCUSSION**

Plaintiffs seek to certify the following class:

> All persons within the United States to whom Defendants (or some person on Defendants' behalf), within four years of October 3, 2012, initiated one or more telephone calls to such persons' residential telephone lines using the recorded voice of Mike Huckabee to deliver a message as part of the above-mentioned campaign regarding the movie Last Ounce of Courage.

Defendants challenge certification of this class on several grounds; their main argument focuses on Plaintiffs alleged failure to prove commonality because they cannot

3

prove lack of consent on a class-wide basis. The Court will address each requirement to certify a class under FRCP 23.

    A.    *Ascertainability*

Defendants argue Plaintiffs have not shown how they can identify or contact the households they claim received the calls, or how they can identify which households have valid claims because they did not consent and suffered an injury.

The Eighth Circuit has not outlined a separate requirement of ascertainability. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016). Instead, the Eighth Circuit states "it is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Id*. In *Sandusky*, the Eighth Circuit found fax logs showing the numbers which received faxes were objective criteria to make the class ascertainable. *Id*. at 997. Defendants cite several cases which outline more stringent requirements for ascertainability of a class, but those cases are from other circuits. This Court follows the guidance of the Eighth Circuit.

Here, the class is ascertainable. Defendants' arguments about consent and injury are addressed *supra*. As to identifying the households, Defendant Joseph Gabriel testified they kept a record of every phone number called by Defendants. There is a pending motion to compel to obtain the names and addresses associated with those phone numbers. However, this does not affect the ability to ascertain the class. Even if only phone numbers are provided, Plaintiffs will be able to derive addresses from the phone numbers because they are residential land lines. Further, Plaintiffs stated they already have a list of 372,159 telephone numbers with names and addresses. Therefore, the Court finds the class is sufficiently ascertainable to satisfy Rule 23.

    B.    *Numerosity*

Plaintiffs assert the class is so numerous, joinder is impracticable. They allege Defendants called four million homes in the telemarketing campaign. Defendants argue Plaintiffs fail to present any evidence to establish numerosity.

The numerosity requirement of FRCP 23 inquires into whether a class is so numerous, joinder of all members is impracticable. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982). No rules have been established regarding the necessary size of classes. *Id*. Besides the size of the class, the Court may also consider the nature of the action, size of the individual claims, inconvenience of trying individual suits, and any other factor relevant to the practicability of joining a class. *Id*. at 559-560.

Plaintiffs provided deposition transcripts from Defendants which state Defendants called four million residential telephone numbers as part of the campaign. Defendant Joseph Gabriel's own testimony about the number of residential telephone numbers called is enough to establish Plaintiffs proposed class of four million. This certainly qualifies as so numerous, joinder of all members is impracticable. Practically speaking, even if the number of class members is much less than four million, it makes much more sense to proceed as a class action rather than attempting to join several thousand individuals in one suit or bringing several thousand individual suits. The size of the individual damage claims are proscribed by statute. *See* 47 U.S.C. § 227(b)(3). Plaintiffs have satisfied the numerosity requirement.

 *C. Commonality*

Defendants argue Plaintiffs cannot prove commonality or that common issues predominate among the proposed class. According to Defendants, individualized issues of consent bar certification. Further, Defendants assert Plaintiffs cannot prove damages or injuries with class-wide proof.

5

Common questions of law or fact must exist between the class members. Fed. R. Civ. Pro. 23(a)(2). Commonality does not have to exist for every question raised in a class action, but a common question linking class members substantially related to the resolution of the litigation must be present. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). This means determination of the truth or falsity of the common question will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Sandusky Wellness Ctr., LLC*, 821 F.3d at 998. Commonality requires the plaintiff to demonstrate class members have all suffered the same injury; this does not necessarily mean they all suffered a violation of the same provision of law. *Wal-Mart Stores Inc.*, 564 U.S. at 348-350. Under FRCP 23(b), the common questions of law or fact must predominate over any questions affecting only individual class members. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). Predominance requires the Court to determine whether Defendants' liability to all plaintiffs may be established with common evidence; if members of the class will need to present evidence that varies from member to member, it is an individual question and does not predominate. *Id*. The Court must "undertake a rigorous analysis that includes examination of what the parties would be required to prove at trial." *Id*. (internal quotations omitted).

The TCPA states "it shall be unlawful for any person . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . ." 47 U.S.C. 227(b)(1)(B). Defendants argue determining if a class member consented is an individual inquiry which cannot be determined on a class-wide basis. This may be true in some TCPA cases. However, in this matter, Plaintiffs have submitted evidence showing this issue may be resolved on a class wide basis. Plaintiffs submitted a deposition of Defendant Joseph Gabriel in which he states none of

6

the four million numbers called had consented to receiving future calls about movies for commercial purposes. Defendants argue some of the numbers had obtained prior consent to call about issues related to religious freedom. Whether consent to call about religious freedom is also consent to receive calls about a movie is a legal question which can be resolved on a class-wide basis and does not require individual inquiry. There is no evidence class members consented in other ways which would require individualized analysis. Based on the evidence submitted, the issue of consent in this case will be determined on a class-wide basis.

Defendants' challenge regarding Plaintiffs' ability to prove damages with class-wide proof centers on their argument regarding consent. Defendants contend Plaintiffs cannot establish class-wide damages because only class members who did not consent are entitled to receive damages and Defendants argue Plaintiffs cannot establish who consented to receive calls. Because this Court has determined consent can be determined on a class-wide basis, Defendants' damages argument fails. They have not asserted any other arguments, and the Court does not forsee any, that prohibits damages from being proven on a class-wide basis.

Finally, Defendants argue Plaintiffs cannot prove injury with class-wide proof. Defendants argue Plaintiffs cannot establish a concrete injury, and do not have standing, because their injury is a bare procedural violation. The issue of what qualifies as an injury to satisfy Article III of the U.S. Constitution in a TCPA case is fiercely contested in the lower courts. In 2016, the United States Supreme Court issued an opinion causing further splits in the lower courts on this issue. In *Spokeo Incorporated v. Robins*, the Supreme Court held Article III standing requires a concrete injury, even when an injury has been established in a statute. 136 S. Ct. 1540, 1549 (2016). The Supreme Court determined a bare procedural violation does not satisfy the injury-in-fact requirement of Article III, and an injury-in-fact is not automatically

established by a violation of a statute. *Id*. Since this decision, district courts across the nation have split on what constitutes an injury under the TCPA that satisfies the Constitution.

In *Romero v. Department Stores National Bank*, the District Court for the Southern District of California held the plaintiff did not establish injury-in-fact, and thus, standing, when she alleged three categories of TCPA violations: (1) phone calls she received but of which she was unaware because she did not hear her phone ring; (2) phone calls she received and heard ring on her phone but did not answer; and (3) phone calls she answered and spoke to a representative of the defendants. No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016). The District Court found the plaintiff only alleged procedural violations and "no reasonable juror could find that one unanswered telephone call could cause lost time, aggravation, distress, or any injury sufficient to establish standing." *Id*. at 4. Further, the District Court determined even for the phone calls she answered, there is no evidence the defendant's use of an automatic dialing system caused her greater lost time, aggravation, and distress than she would have suffered had the calls been dialed manually. *Id*. at 5.

In contrast, in *Krakauer v. Dish Network, LLC*, the Middle District of North Carolina held telemarketing calls made in violation of the TCPA are more than bare procedural violations. 168 F. Supp. 3d 843, 845 (M.D. N.C. 2016). The District Court found these calls are concrete injuries because they are disruptive and an invasion of privacy. *Id*. Further, the District Court determined even calls which class members did not pick up or hear ring are concrete injuries because each call creates, at a minimum, a risk of an invasion of a class member's privacy. *Id*. The District Court also included a list of cases which have been decided since *Spokeo* holding calls which violate the TCPA establish concrete injuries. *Id*.

8

This Court finds the reasoning in *Krakauer*, and similar cases, to be more persuasive. Unwanted calls cause a risk of injury due to interruption, distraction, and invasion of privacy. These are concrete injuries and not just bare procedural violations. *See also Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195 (N.D. W.V. Jun. 30, 2016); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016); *Holderread v. Ford Motor Credit Company, LLC*, No. 4:16-CV-00222, 2016 WL 6248707 (E.D. Tex. Oct. 26, 2016). Here, Plaintiffs have alleged they received two phone calls, with language from a prerecorded script left on their answering machine. This is a concrete injury and Plaintiffs have standing to bring this suit.

The remaining issue to address for commonality is predominance. There are common questions of law and fact that predominate over individual questions in this matter. These questions include whether Defendants initiated the phone calls using an artificial or prerecorded voice to deliver a message to residential telephone lines for commercial purposes, if Defendants knowingly and willingly violated the TCPA, if these calls constitute "telephone solicitation," if Plaintiffs are entitled to damages, the amount of damages, and if Plaintiffs are entitled to injunctive relief. These questions predominate because common evidence may be used to establish the answers. This was a nationwide telemarketing plan, implemented in the same manner to all residential telephone lines. Plaintiffs have satisfied these two requirements of Rule 23 for class certification.

*D.     Typicality*

Defendants challenge Plaintiffs' Motion for Class Certification by arguing Plaintiffs' experiences are not typical of the class. Defendants assert other class members may have

9

consented, been at home at the time the calls were made, answered the phone, and suffered a concrete injury-in-fact, unlike Plaintiffs.

The typicality requirement of Rule 23 requires the Court to compare Plaintiffs to prospective class members. *NPA-ERISA Track Cases Only v. Express Scripts, Inc.*, No. 4:05MD01672HEA, 2015 WL 128073 at *5 (E.D. Mo. Jan. 8, 2015) (citing *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990)). A class representative must be a part of the class and suffer the same injury, as the other class members. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). "The burden is easily met so long as other class members have claims similar to the named plaintiff." *Janson v. LegalZoom.com, Inc.*, 271 F.R.D. 506, 510-511 (W.D. Mo. 2010) (internal quotations omitted) (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).

Plaintiffs' claims are similar to the class. All concern calls about Last Ounce of Courage and the same prerecorded message was played for each. Whether other individuals were home at the time of the phone call and answered the phone is inconsequential to the typicality analysis. Class members do not have to have the same *exact* experience and course of conduct as the named plaintiff. Plaintiffs' claims are typical of the class.

*E. Adequacy*

Defendants challenge the adequacy of Plaintiffs to represent the class by arguing Plaintiffs did not actually suffer an injury under *Spokeo* and Plaintiffs have a close relationship with counsel.

The class representative and class counsel must fairly and adequately protect the interests of the class. Fed. R. Civ. Pro. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to

uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The Court has already determined Plaintiffs have an actual injury under *Spokeo*; thus, the only remaining argument is Plaintiffs' close relationship with counsel. Defendants assert Plaintiffs' counsel is a close friend of Plaintiffs and a running mate, and he also received a call about this movie campaign. Further, Defendants argue Plaintiffs did not even think about filing this lawsuit until Plaintiffs' counsel asked them to participate. Therefore, Defendants contend, Plaintiffs relationship with counsel is too close and it will appear as if Plaintiffs are doing their counsel a favor by pursuing this lawsuit so he can receive a large fee. Plaintiffs argue they do not have common financial or business interests with counsel, and they have never worked for counsel, which they claim are the only ways to create a conflict of interest.

Plaintiffs' relationship with counsel does not create a conflict of interest. Defendants' argument would require individuals to never pursue cases with attorneys they know, but only with strangers. Numerous district courts have held even a familial relationship is not enough to create a conflict of interest; instead, courts look for shared financial interests. *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303 (S.D. N.Y. 2004); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001). A friendship and shared passion for running do not create a conflict of interest. Further, Plaintiffs' remaining counsel, including Robert Shultz, John Simon and Kevin Carnie do not have a personal relationship with Plaintiffs. Defendants have not alleged a shared financial interest. Plaintiffs' counsel are respected attorneys who have handled litigation of this magnitude in the past. Plaintiffs, and their counsel, are adequate representatives of the class.

  F. *Superiority*

The remaining requirement for class certification is superiority. Rule 23(b)(2) requires a class action to be the superior method for fair and efficient adjudication of the dispute for a class to be certified. *Grovatt v. St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). To reach this conclusion, a court considers (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against the class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. A district court considering class certification "must undertake a rigorous analysis that includes examination of what the parties would be required to prove at trial." *Avritt*, 615 F.3d at 1029 (internal quotation marks omitted).It is clear a class action is a superior method of adjudication in this matter. The number of class members is expressed in millions. A class action will be efficient, conserve judicial resources, and allow for consistent rulings for all class members. Additionally, there are not any known lawsuits concerning this same telemarketing campaign with which a class action would interfere.

  G. *Notice Plan*

Defendants argue Rule 23(c)(2) requires Plaintiffs to provide a notice plan for the class to be certified. However, the language of Rule 23(c)(2) directly contradicts this argument. Rule 23(c)(2)(A) and (B) state "For any class certified . . ." Once a class is certified, then the Court directs notice to class members. Plaintiffs are not required to submit a notice plan prior to class certification.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification [ECF No. 172] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Supplemental Motion to Certify Class [ECF No. 207] is **GRANTED**.

Dated this 18th Day of January, 2017.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE