RON GOLAN, et al.,                              )
                                                )
                Plaintiff(s),                   )
                                                )
        v.                                      )       No. 4:14CV00069 ERW
                                                )
VERITAS ENTERTAINMENT, LLC, et al.,            )
                                                )
                Defendant(s).                   )

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' First Motion for Partial Summary

Judgment on the Issue of Damages [ECF No. 239], Plaintiffs' Second Motion for Partial

Summary Judgment on Defendants' Newly Pleaded Affirmative Defense of Consent [ECF No.

243], Plaintiffs' Third Motion for Partial Summary Judgment on the Issue of Telemarketing

[ECF No. 246], Plaintiffs' Fourth Motion for Partial Summary Judgment on Defendants' Newly

Pled Defenses of Due Care, Prior Established Business Relationship, and Comparative Fault

[ECF No. 249], Defendant Dr. James R. Leininger's Motion for Summary Judgment [ECF No.

265], and Defendant Courage 2012, LLC's Motion for Summary Judgment [ECF No. 267].

## I.    BACKGROUND

This lawsuit originated in the Circuit Court of St. Louis County, Missouri when Plaintiffs

Ron and Dorit Golan ("Plaintiffs") filed a petition against Defendants Veritas Entertainment,

LLC; Veritas Marketing Group, LLC; Freeeats.com doing business as ccAdvertising; AIC

Communications, LLC, doing business as ccAdvertising;[1] Gabriel S. Joseph, III; Stephen Wayne

---

[1] FreeEats.com is incorporated as a Sub S corporation, and ccAdvertising was originally doing
business as FreeEats.com. The corporation then had an asset allocation and transferred its assets
to AIC Communications, LLC. As a result, ccAdvertising is now doing business as AIC

Griffin; Mission City Management, Incorporated; Courage 2012, LLC; Dr. James R. Leininger; SixDi, Incorporated; Bob Brewer; and Michael Huckabee ("Defendants") alleging Defendants violated the TCPA, by making unsolicited pre-recorded calls to residential telephone lines. [ECF No. 1]. On January 15, 2014, Mission City Management Incorporated ("Mission City") removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453. [ECF NO. 1]. Defendants Michael Huckabee ("Huckabee"), Bob Brewer ("Brewer"), SixDi, Incorporated ("SixDi"), and Mission City were dismissed from the case. The remaining Defendants and Plaintiffs filed six motions for summary judgment which the Court now addresses. The undisputed facts are as follows.

A.     *Uncontroverted Facts*

Dr. James R. Leininger is a medical doctor and is engaged in several medical businesses. [ECF No. 272 ¶ 2-3]; [ECF No. 288 ¶ 2-3]. He has also engaged in several movies promoting traditional American values. [ECF No. 272 ¶ 5]; [ECF No. 288 ¶ 5]. Mission City is a Texas corporation that provides advisory services to various companies, and Dr. Leininger is the sole shareholder of Mission City. [ECF No. 272 ¶ 7-9]; [ECF No. 288 ¶ 7-9]. Enthuse Entertainment is a Texas corporation that invests in entertainment related businesses. [ECF No. 272 ¶ 21]; [ECF No. 288 ¶ 21]. Dr. Leininger is the sole owner of Enthuse Entertainment. [ECF No. 272 ¶ 22]; [ECF No. 288 ¶ 22].

On January 24, 2012, Dr. Leininger watched the movie Last Ounce of Courage ("the Movie"). [ECF No. 272 ¶ 23]; [EFC No. 288 ¶ 23]. Following the screening, he considered

---

Communications, LLC. FreeEats.com still exists but is not doing business. Joseph is the owner of ccAdvertising.

investing in the movie through Enthuse Entertainment. [ECF No. 288 ¶ 23].[2] Enthuse

Entertainment invested approximately $10 million in the Movie through Courage 2012, LLC

("Courage 2012") in order to take an equity stake in the movie. [ECF No. 288 ¶ 30].[3]

Veritas Marketing Group, LLC ("Veritas Marketing"), a Tennessee limited liability

company, was created to manage, market, and promote media, including the Movie. [ECF No.

272 ¶ 25-26]; [ECF No. 288 ¶ 25-26]. Steve Wayne Griffin ("Griffin") has been president of

Veritas Marketing Group since 2012. [ECF No. 272 ¶ 27]; [ECF No. 288 ¶ 27]. Courage 2012, a

Texas limited liability company formed on May 23, 2012, owns the Movie. [ECF No. 272 ¶ 31-

33]; [ECF No. 288 ¶ 31-33]. Courage 2012 is owned by three entities; Veritas Entertainment,

LLC ("Veritas Entertainment") and Eastern Gate,[4] together, own 33 1/3% of Courage 2012, and

Enthuse Entertainment owns the remaining 66 2/3%. [ECF No. 272 ¶ 34]; [ECF No. 288 ¶ 34].

On May 24, 2012, Courage 2012 entered a marketing agreement with Veritas Marketing

to market and distribute the Movie. [ECF No. 288-12].[5] Veritas Marketing had the exclusive

right to negotiate and select all third parties necessary to assist in the marketing of the Movie.

[ECF No. 288-12, at section 1].[6] Dr. Leininger did not sign or negotiate the marketing

agreement. [ECF No. 272 ¶ 40]; [ECF No. 288 ¶ 40].

On July 9, 2012, Gabriel S. Joseph, III ("Joseph")[7] emailed Griffin a document

---

[2] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact. One of their citations supports it. The Court accepts this fact as true.
[3] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact. One of their citations supports it. The Court accepts this fact as true.
[4] Eastern Gate produced the Movie, but is not a party to this case.
[5] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact an agreement was entered on May 24, 2012 between Courage 2012 and Veritas Marketing.
[6] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert this fact. The agreement contains the language stated.
[7] For explanatory purposes, Joseph is the sole owner of ccAdvertising and Veritas Marketing hired ccAdvertising to work on the telephone campaign.

describing ccAdvertising's Opt-in Channel program and on July 12, 2012, Joseph and Griffin met. [ECF No. 272 ¶ 50-51]; [ECF No. 288 ¶ 50-51]. At the meeting, Joseph made a pitch to promote the Movie. [ECF No. 272 ¶ 52]; [ECF No. 288 ¶ 52]. Dr. Leininger did not attend. [ECF No. 272 ¶ 53]; [ECF No. 288 ¶ 53]. At this meeting, Joseph showed Griffin a PowerPoint presentation including a slide demonstrating how ccAdvertising allegedly complied with the TCPA. [ECF No. 274-46].[8] On August 2, 2012, Joseph shared his PowerPoint presentation with others involved in the telephone campaign. [ECF No. 272 ¶ 55]; [ECF No. 288 ¶ 55]. The recipients included Brewer of SixDi who was hired by Veritas Marketing Group to assist with ccAdvertising's marketing campaign efforts for the Movie. [ECF No. 272 ¶ 56]; [ECF No. 288 ¶ 56]. Dr. Leininger was not sent the PowerPoint presentation and never saw it. [ECF No. 272 ¶ 59]; [ECF No. 288 ¶ 59].

On or around August 7, 2012, acting on behalf of Veritas Marketing Group, Griffin engaged Joseph and his company, ccAdvertising, to conduct the telephone campaign at issue. [ECF No. 288 ¶ 60].[9] On August 24, 2012, Brewer provided Joseph with zip codes of theater locations where the Movie was playing. [ECF No. 272 ¶ 75]; [ECF No. 288 ¶ 75].

On April 10 or 11, 2012, Dr. Leininger and Griffin went to Huckabee's home in Florida where Huckabee screened the Movie. [EFC No. 272 ¶ 42]; [EFC No. 288 ¶ 42]. At the end of August 2012, Joseph sent the script to Huckabee to record. [ECF No. 275-67].[10] On August 29, 2012, Joseph emailed the draft script to Griffin for the first time. Dr. Leininger was carbon copied on the email sent to Griffin. [ECF No. 272 ¶ 96]; [ECF No. 288 ¶ 96]. Griffin responded

---

[8] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact. The Court added allegedly to the fact, because whether ccAdvertising complied with the TCPA is a legal conclusion.

[9] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact.

[10] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact.

saying he was pleased with the script. [EFC No. 272 ¶ 100]; [EFC No. 288 ¶ 100]. Dr. Leininger did not respond to the email on which he was copied. [ECF No. 288 ¶ 100, 102].

On September 4, 2012, Joseph emailed the script to Brewer and Griffin, stating Huckabee was going to record the script and to "Please review the script and get me any comments ASAP." [ECF No. 272 ¶ 105]; [ECF No. 288 ¶ 105]. Neither of them provided him with any comments or input on the script. [ECF No. 272 ¶ 106]; [ECF No. 288 ¶ 106]. On September 5, 2012, Brewer and Griffin were designated to receive test calls of Huckabee's recording. [ECF No. 272 ¶ 108]; [ECF No. 288 ¶ 108]. Although Griffin did not listen to the test call, he told Brewer he approved of the call and Brewer then relayed this message to Joseph. [ECF No. 272 ¶ 113]; [ECF No. 288 ¶ 113]. On September 6, 2012, ccAdvertising invoiced Veritas Entertainment $248,500 as the total balance owed for the call campaign. [ECF No. 272 ¶ 80]; [ECF No. 288 ¶ 80]. By October 6, 2012, Joseph confirmed to Griffin Veritas Marketing had completed final payment for the call campaign. [ECF No. 272 ¶ 81]; [ECF No. 288 ¶ 81].

On September 6, 2012, Joseph called Dr. Leininger and asked him to listen to a sample of Huckabee's recording of the script. [ECF No. 288 ¶ 114, 116].[11] Joseph asked Dr. Leininger for his opinion of the call, and Dr. Leininger said he "thought its way too long" and boring, and people would hang up and not listen. [ECF No. 288 ¶ 117].[12]

On September 6, 2012, Joseph emailed Brewer and Griffin, stating he had spoken with Dr. Leininger about the telephone campaign. Joseph said in his email Dr. Leininger "asked if we could go from Segment 2 to Segment 5." [ECF No. 272 ¶ 122]; [ECF No. 288 ¶ 122].[13] Dr.

---

[11] Plaintiffs denied this fact. From the documents in the record, the Court holds this statement to be uncontroverted.
[12] Plaintiffs denied this fact. From the documents in the record, the Court holds this statement to be uncontroverted.
[13] The email does not state, nor do the parties state, the contents of Segments 2 and 5.

Leininger never received the final version of the script, and was never offered the opportunity to listen to the final version of the telephone campaign call. [ECF No. 288 ¶ 127].[14] In addition to Dr. Leininger, Griffin and Brewer did not listen to Joseph's version of the script edited after September 6, 2012. [ECF No. 288 ¶ 128].[15]

ccAdvertising conducted the telephone campaign from September 9-15, 2012. [ECF No. 275-78].[16] ccAdvertising called 2,870,334 parties who did not participate in the campaign, and called 372,159 parties who did participate in the campaign survey. [ECF No. 209-3].[17] Homeowners who did not answer the phone or answer at least two questions of the survey did not hear any mention of the Movie. [ECF No. 349 ¶ 8]. A total of 234,208 call recipients[18] triggered the third question of the survey, which invited a recipient to answer "yes" to hear more information about the Movie. [ECF No. 349 ¶ 9]. People who did not answer the phone or answer at least three questions of the survey did not hear any information relating to when the Movie opened in theaters, the Movie's website address, or the plot of the Movie. [ECF No. 349 ¶ 10]. The voicemails Plaintiffs received do not identify or otherwise reference the Movie. [ECF No. 288 ¶ 133].[19] No version of the script or voicemails identified Dr. Leininger, Courage 2012, or Mission City to call recipients. [ECF No. 272 ¶ 132]; [ECF No. 288 ¶ 132].

Joseph and ccAdvertising determined who would receive the calls and how many times a call recipient would be called. [ECF No. 272 ¶ 143-44]; [ECF No. 288 ¶ 143-44]. ccAdvertising possessed the phone numbers to use for the campaign and did not obtain them from any other Defendant. [ECF No. 272 ¶ 145]; [ECF No. 288 ¶ 145]. Homeowners did not provide their

---

[14] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact.
[15] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact.
[16] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact.
[17] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact.
[18] A call recipient is an individual who answered the telephone when called by Defendants.
[19] Plaintiffs deny this fact. The citations Plaintiffs provide fail to controvert the fact.

numbers to Defendants. [ECF No. 248 ¶ 4]; [ECF No. 315 ¶ 4]. ccAdvertising purchased a licensing agreement whereby ccAdvertising paid $50,000 per year to Axiom in exchange for a right to access phone records. [ECF No. 209-3]. On September 10 and September 12, 2012, ccAdvertising called Plaintiffs' residential number. On both dates, a voicemail was left on Plaintiffs' answering machine. [ECF No. 272 ¶ 149]; [ECF No. 288 ¶ 149].

ccAdvertising sent the telephone campaign results and progress of calls to Brewer and Griffin. [ECF No. 272 ¶ 151]; [ECF No. 288 ¶ 151]. Griffin never reviewed this data. [ECF No. 272 ¶ 152]; [ECF No. 288 ¶ 152]. As of October 20, 2016, Ron and Dorit Golan did not know Dr. Leininger. [ECF No. 272 ¶ 156-58]; [ECF No. 288 ¶ 156-58].

### B.    Controverted Facts

The following facts were asserted by Plaintiffs or Defendants and were controverted by the opposing party. The Court finds these facts to be material and in dispute.

Dr. Leininger did not hire Joseph or his company ccAdvertising, and Courage 2012 did not hire Joseph or his company ccAdvertising. [EFC No. 272 ¶ 61-62]; [EFC No. 288 ¶ 61-62]. It was Joseph's suggestion alone to use Huckabee to record the script. [EFC No. 272 ¶ 85]; [EFC No. 288 ¶ 85]. Dr. Leininger did not recommend Joseph use Huckabee nor did he ask Huckabee to be the voice of the telephone campaign. [EFC No. 272 ¶ 86]; [EFC No. 288 ¶ 86].[20] Huckabee did not contact Dr. Leininger to advise him he had agreed to be the voice of the telephone campaign. [EFC No. 272 ¶ 88]; [EFC No. 288 ¶ 88].[21] Joseph made the decision to skip segments after hearing Dr. Leininger's opinion about the call. [EFC No. 272 ¶ 124]; [EFC No.

---

[20] In Griffin's deposition transcript, EFC No. 288 exhibit 2, at 129:14-25, he was asked "When you met with Mr. Huckabee face-to-face that one time and showed him the movie, was that meeting arranged by Dr. Leininger?" Griffin responded "Yes, it was."

[21] Dr. Leininger claims this in EFC No. 272 ¶ 88. Plaintiffs deny this claim in EFC No. 272 ¶ 88, and provide exhibit 33G, which has an email from Griffin to Joseph which states in the email subject line "can you give me a call, Dr. L says Huckabee is a go for the voice over."

288 ¶ 124]. Dr. Leininger did not suggest skipping from Segment 2 to Segment 5. [EFC No. 272 ¶ 123]; [EFC No. 288 ¶ 123].[22]

## II. STANDARD

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts demonstrating a genuine dispute on the specific issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465

---

[22] Dr. Leininger claims this in EFC No. 272 ¶ 123. Plaintiffs deny this claim in EFC No. 288 ¶ 123 and provide Exhibit 11, which is an email from Joseph to Brewer, Griffin, and others. The email stated "I have been in contact with Dr. Leininger today… He asked if we could go from Segment 2 to Segment 5 and skip the questions in between."

(8th Cir. 2002). The non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

## III. DISCUSSION

Plaintiffs and Defendants FreeEats.com, AIC Communications, Joseph, Griffin, Veritas Marketing, Courage 2012, and Dr. Leininger (hereinafter "Defendants") filed six motions for summary judgment which raise issues concerning damages, consent to the telephone calls, whether the calls are telemarketing, joint and several liability, and the liability of Dr. Leininger and Courage 2012.[23] The Court will address each motion as follows.

### A. *Damages*

In their Motion for Partial Summary Judgment on the Issue of Damages [ECF No. 239], Plaintiffs ask the Court to determine the amount of damages to be awarded if Defendants are found liable. Plaintiffs are not asking the Court to find liability in their Motion for Summary

---

[23] Each Defendant joined in all of the responses to Plaintiffs' Motions for Summary Judgment.

Judgment. According to Plaintiffs, the determination of damages is simple: the number of telephone calls multiplied by the minimum amount of damages per call allowed under the TCPA, or $500. Plaintiffs claim there is no factual dispute Defendants made four million telephone calls as part of the campaign. Therefore, Plaintiffs assert the Court can easily determine the amount of damages to be awarded on summary judgment; four million times $500 for each call or $2,000,000,000.

Defendants, of course, disagree. Defendants contend a damages calculation cannot precede the presentation and evaluation of the evidence for liability, because Defendants may decide to challenge the damages award as unconstitutionally excessive. According to Defendants, the Court cannot determine if a damages award is excessive until a trial with all of the facts and evidence. Further, Defendants argue there are material facts in dispute precluding the granting of summary judgment including the number of telephone calls initiated, and which telephone calls violate the TCPA, if any. Plaintiffs, in reply, assert any argument damages are excessive has been waived by Defendants, because it was not pled as an affirmative defense.

Defendants' argument has not been waived for failure to plead it as an affirmative defense. An affirmative defense occurs where "a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Purzel Video GmbH v. St. Pierre*, 10 F. Supp. 3d 1158, 1170 (D. Colo. 2014) (citing Black's Law Dictionary, 9th Ed.). "An affirmative defense should accept, rather than contradict, well-pleaded allegations of the complaint" and if accepted by the Court, will defeat an otherwise legitimate claim for relief. *Crow v. Wolpoff & Abramson*, No. CIV.06 3328 PAM/JSM, 2007 WL 1247393 at *3 (D. Minn. Apr. 19, 2007+). Defendants' argument the statutory damages may be excessive and in violation of the due process clause of the Fourteenth

Amendment of the United States Constitution, does not defeat any of Plaintiffs' claims. It focuses on potential relief, not potential liability. *See Greiff v. TIC Enterprises, LLC*, No. Civ. 03-882-SLR, 2004 WL 115553 at *3 (D. Del. Jan. 9, 2004); *J & J Sports Productions, Inc. v. Ramirez Bernal*, No. 1:12-CV-01512-AWI-SMS, 2014 WL 2042120 at *6 (May 16, 2014). Therefore, Defendants do not lose on this issue for failure to plead an affirmative defense and are not precluded from raising this issue after trial.

The Court will not decide the amount of damages to be awarded on summary judgment, because it would be improper to determine which damages are unconstitutionally excessive before a trial has occurred. Damages under the TCPA, and other statutes which award statutory damages, may be reduced as unconstitutionally excessive. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced . . ."); *Maryland v. Univ. Elections, Inc.*, 862 F. Supp. 2d 457, 466 (D. Md. 2012) (finding statutory damages under the TCPA should be reduced); *Centerline Equip. Corp. v. Banner Personnel Service, Inc.*, 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) (finding the appropriate remedy to damages so excessive as to be improper, is a reduction of the aggregate damage award). A number of factors would be considered in determining if damages are excessive including Defendants' conduct and financial situation, which is not currently before the Court. Therefore, the Court will deny Plaintiffs' Motion for Summary Judgment on the issue of awarding damages before liability has been determined and how, if at all, any constitutional challenge shall apply.

B.      *Telemarketing and Consent*

Plaintiffs' second and third Motions for Summary Judgment raise intertwined issues which the Court will address together. In their second Motion for Summary Judgment [ECF No.

243], Plaintiffs ask the Court to determine Defendants did not have prior express consent from class members to make the telephone calls at issue, because the purpose of the telephone calls was to advertise a movie, a topic for which Defendants did not have prior express consent. Further, Plaintiffs assert Defendants could not have had consent, because they obtained the phone numbers from a third party. Defendants argue there are material facts in dispute about the scope of consent. According to Defendants, the FCC and case law broadly interpret the definition of consent under the TCPA. Defendants claim ccAdvertising obtained broad consent to call each telephone phone number about religious freedom and the telephone calls at issue fall within this consent. Further, Defendants assert the favorable response to the questions asked in the telephone calls shows consent was obtained. Defendants contend if the Court breaks down the telephone call into each section, then, the Court will find the telephone calls did not violate the TCPA, because not all individuals called heard about the movie.

In their third Motion for Summary Judgment, Plaintiffs ask the Court to decide the telephone calls made by Defendants constituted telemarketing or telephone solicitations. According to Plaintiffs, in its ruling on this Court's granting of Defendants' Motion to Dismiss, the Eighth Circuit determined the telephone calls constituted telemarketing. Defendants, in opposition, argue the Eighth Circuit's decision was based on accepting all of Plaintiffs' allegations as true on Defendants' motion to dismiss; therefore, the appellate court's determination the telephone calls were telemarketing is not controlling at this stage of the case. Defendants also assert there is a genuine issue of material fact with respect to the purpose and nature of the telephone calls. Defendants claim the telephone calls were not commercial, but were political research. The Court will first address the issue of the purpose of the telephone calls and then whether Defendants had consent.

*i.        Purpose of the Telephone Calls*

The first issue to be addressed is identifying the purpose of the telephone calls. The

TCPA prohibits a person from initiating a telephone call to a residential telephone line, using an

artificial or prerecorded voice, unless the person has the prior express consent of the recipient of

the telephone call or it is not made for a commercial purpose. 47 U.S.C. § 227(b)(1)(B),

(2)(B)(i). The Federal Communications Commission ("FCC") has promulgated regulations for

the TCPA, as instructed by Congress, and has elaborated on when a telephone call is permissible.

47 U.S.C. § 227(b)(2). No person may initiate, or cause to be initiated, a telephone call that

includes an advertisement or constitutes telemarketing using an automatic telephone dialing

system or prerecorded voice without prior express consent of the recipient. 47 C.F.R. §

64.1200(a)(2). A telephone call using a prerecorded voice is permissible if the telephone call is

made for a commercial purpose, but does not include an advertisement or constitute

telemarketing. 47 C.F.R. § 64.1200(a)(3)(iii). The regulations define advertisement as "any

material advertising the commercial availability or quality of any property, goods, or services"

and telemarketing as "the initiation of a telephone call or message for the purpose of encouraging

the purchase or rental of, or investment in, property, goods or services, which is transmitted to

any person." 47 C.F.R. § 64.1200(f)(1), (12). Guidance from the FCC states telephone calls

conducting research, market surveys, political polling or similar activities, are exempted from the

TCPA, because they are for a non-commercial purpose. *In the Matter of Rules and Regulations

Implementing the Tel. Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8774 (1992). When

analyzing a telephone call under the TCPA, the caller's characterization of the call is not

important; instead, the Court focuses on the purpose of the message. *In the Matter of Rules and

Regulations Implementing the Tel. Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1842-

43 (2012).

Although Defendants assert there are disputed facts regarding the purpose of the telephone call, the Court need only read the script of the prerecorded message to determine these telephone calls are telemarketing. The third and fourth segments of the script state:

> I am an enthusiastic supporter of a new movie called Last Ounce of Courage. It is a film about faith, freedom, and taking a stand for American values. May I tell you more about why I recommend that you and all Americans see the movie Last Ounce of Courage?

> Thank you for your interest. Last ounce of Courage opens in Theaters on Friday, September 11th. Last Ounce of Courage will inspire you and your loved ones to celebrate our nation and the sacrifices made to protect our liberties. It is a great story about taking a stand for religious freedom. The film is a timely reminder of all that is worth defending in our nation. Experience the Last Ounce of Courage Trailer and see audience reactions at WWW dot Last Ounce the Movie dot com, that's Last Ounce the Movie dot com.

ECF No. 275, pg. 43, 44. Additionally, it is clear the first two segments of the script are to set up the introduction of the movie. In the first segment, Mr. Huckabee asks "Do you believe in American Freedom and Liberty?" ECF No. 275, pg. 43. Then, in the second segment, he asks, "Are you, like me concerned that in the last 10-years Americans have lost some of their rights and religious freedom?" ECF No. 275, pg. 43. These segments all focus on the Movie and getting consumers to see the Movie.

Defendants characterize these questions as a political survey to collect data for Joseph and state Veritas Marketing sponsored the political survey with the hope of callers also seeing the movie. However, there is no way to interpret this script as anything other than an attempt to convince consumers to go see the Movie. This is telemarketing; the telephone calls are for the purpose of encouraging the purchase of a product, here, a movie.

Defendants argue these telephone calls have a dual purpose – a political survey and advertisement of the movie, but the dominant purpose of the telephone calls is the political

survey. Therefore, according to Defendants, they are not telemarketing. Defendants' argument fails for several reasons. First, the FCC has rejected this argument, finding "dual purpose calls," in most instances, constitute "unsolicited advertisements." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection Act*, 18 FCC Rcd. 14014, 14098 (2003). The Ninth Circuit found this interpretation of the TCPA by the FCC is entitled to the court's deference. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Second, it is clear from the script, there was only one purpose of these telephone calls, to market the movie. However, even if Defendants' argument was correct, the dominant purpose of the telephone call is to market the movie, not to conduct a political survey. The focus of the telephone call is the movie and values represented in the movie, while only two questions, if any, can be considered a political survey. Because the telephone calls are telemarketing, they are subject to the TCPA; the Court will grant Plaintiffs' Motions for Summary Judgment, concluding the purpose of the calls was for telemarketing.

### ii.    Consent

Even though the telephone calls at issue in this matter are considered telemarketing, they only violate the TCPA if they were made without the prior express consent of the recipients of the telephone calls. 47 U.S.C. § 227(b)(1)(B). Prior consent is not an element of Plaintiffs' prima facie case, but is an affirmative defense for which Defendants bear the burden of proof. *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. App'x 598, 600 n.1 (9th Cir. 2001); *Elkins v. Medco Health Solutions, Inc.*, No. 4:12CV2141 TIA, 2014 WL 1663406 at *6 (E.D. Mo. Apr. 25, 2014). The scope of consent is determined by the facts of each situation. *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 343 (6th Cir. 2016).

First, Defendants argue they obtained prior express consent for the telephone calls

because ccAdvertising received consent to call each telephone number about religious freedom and the FCC and case law interpret consent broadly. The FCC and case law have not interpreted the TCPA as broadly as Defendants request. Providing a phone number to an entity does not mean the consumer has expressly consented to contact for any purpose; consent for one purpose does not equate to consent for all purposes. *Van Patten v Vertical Fitness Gp.*, 847 F.3d 1037, 1045 (9th Cir. 2017); *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813 at *4 (N.D. Ill. Jul. 7, 2014). "[T]he consent must be considered to relate to the type of transaction that evoked it." *Van Patten*, 847 F.3d at 1045. In this matter, Defendants assert they obtained consent to call the numbers about religious freedom or religious liberty. This is not consent to receive telephone calls advertising a movie, even if the movie, in some manner, relates to religious freedom. Consent for a political topic is not consent for an advertisement. Additionally, the Court is not confident prior consent was obtained for telephone calls about religious freedom or liberty, because the only evidence to which Defendants cited was their own testimony they obtained consent. There was no other evidence introduced regarding this alleged consent obtained by ccAdvertising. The FCC's interpretations and case law on consent under the TCPA are not so broad as to encompass an advertisement for a movie into consent to hear about religious liberty.

Next, Defendants argue the telephone calls should be split into sections, because an individual only heard about the Movie if he or she answered yes to the first two questions. However, this argument has been expressly rejected by other district courts. *See Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150 (N.D. Ill. 2014) (Finding a consumer's participation in an automated call does not amount to the prior express consent required by the statute.); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247 at *11 (W.D. Wash. Mar. 30, 2015)

(Holding the defendants' contention class members who pressed one in response to a message provided consent is incorrect.). *Prior* express consent does not include consent during the telephone call. *In the Matter of Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14099 (2003). Defendants must have obtained consent before placing the phone call, which did not happen here. For these reasons, the Court finds there was not prior express consent and Plaintiffs' summary judgment motion on this issue will be granted.

> D.     *Comparative Fault*

In their Motion for Partial Summary Judgment on the Issue of Comparative Fault, [ECF No. 250], Plaintiffs ask the Court to hold comparative fault is not applicable to this case. Plaintiffs argue Defendants are not actually seeking comparative fault, but some other form of an unpled defense. Plaintiffs claim comparative fault reduces the verdict amount by the percentage fault of Plaintiffs, and since Plaintiffs have no fault in this matter, this defense is not applicable.

Defendants argue "any recovery should be reduced or barred in proportion to the degree or percentage of fault attributable to Plaintiffs, putative class members, and/or others." Defendants want to allocate damages among themselves and are not claiming Plaintiffs were negligent. Defendants believe comparative fault can be applied to claims under the TCPA even if Plaintiffs were not at fault.

Comparative fault, also sometimes referred to as comparative negligence, is "a plaintiff's own negligence that proportionately reduces the damages recoverable from the defendant." Bryan A. Garner, *Black's Law Dictionary* (7th ed. 1999). In the case before the Court, Defendants are not claiming Plaintiffs were negligent in any form. As a result, the Court agrees with Plaintiffs that comparative fault is not applicable to the allocation of damages among Defendants.

TCPA claims are statutory tort claims. *Branham v. Isi Alarms, Inc.*, No. 12-CV-1012, 2013 U.S. Dist. LEXIS 124933, at *18 (E.D.N.Y. Aug. 30, 2013). Defendants are correct when they state the governing statutory provision, 47 U.S.C. § 227(b)(3), is silent as to the issue of comparative fault. Since the TCPA is silent on the issue, "federal courts apply federal law to the substantive issue in a private TCPA claim." *Hannabury v. Hilton Grand Vacations Co., LLC*, 174 F. Supp. 3d 768, 773 (W.D.N.Y. 2016). Defendants state "where the TCPA is silent as to relative or comparative fault, the court must apply federal common law, which recognizes such an affirmative defense." (ECF No. 317, at 4). They cite *Eichler v. Lufthansa German Airlines* in support of this argument. 794 F. Supp. 127, 130 (S.D.N.Y. 1992). Comparative fault was an issue for the jury in *Eichler*, but only because the plaintiff was possibly negligent. Thus, *Eichler* is not applicable to these facts, because in this case there are no circumstances where Plaintiffs could be considered negligent.

Defendants assert when controlling case law is absent, a federal court may look to state law, as well as the Restatement for guidance. However, controlling case law is not absent from this case. Federal cases addressing the TCPA have routinely held defendants to be jointly and severally liable for the damage they caused.

There are a many federal cases where the courts have held multiple defendants to be jointly and severally liable for violating the TCPA. *See Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 897-99, (W.D. Tex. 2001) (holding multiple defendants jointly and severally liable for sending intrastate fax advertisements); *See also Roylance v. ALG Real Estate Servs.*, No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015) (holding defendants jointly and severally liable for prerecorded message offering cheap loans).

Defendants provided one case where damages under the TCPA were apportioned based

on culpability. The case at issue is *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 466, (D. Md. 2012). Plaintiffs argue this case "was wrongly decided, has never been followed, and is an outlier in the law. The Court finds *Maryland v. Universal Elections* to be an anomaly from the far majority of TCPA federal cases. On this issue, the Court will follow the greater weight of authority of the case law.

Based on federal case law, the Court will apply joint and several liability if Defendants are found to be liable. Therefore, the Court will grant Plaintiffs' Motion for Summary Judgment on the issue of comparative fault.

        E.        *Dr. Leininger and Courage 2012, LLC*

The final two motions for summary judgment concern Defendants Dr. Leininger and Courage 2012. The facts which form the basis for these motions are the same or similar; thus, the Court will address them together.

Dr. Leininger and Courage 2012 assert all claims against them should be dismissed, because Plaintiffs have not proved they are liable for violations of the TCPA. Both Defendants claim they did not make the telephone calls, they did not have actual or implied authority over those who made the telephone calls, nor did they ratify the conduct of those who made the telephone calls.

A seller who does not initiate a telephone call under the TCPA may still be vicariously liable for certain telemarketing calls. *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 CC Rcd. 6574, 6584 (2013); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014). Vicarious liability may be found through the federal common law principals of agency including formal agency, apparent authority, and ratification. *Id.* "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an

'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW (AGRx), 2015 WL 3526253 at *6 (C.D. Cal. May 18, 2015) (quoting Restatement (Third) of Agency § 1.01 (2006)). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Agency requires request, instruction or command. *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012).

A corporate officer or director can only be liable if he or she directly participated in or authorized the commission of a wrongful act. *Ott v. Mortgage Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1060 (D. Ore. 2014); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 897-98 (W.D. Tex. 2001). If a seller has the ability to oversee the conduct of telemarketers, even if unexercised, it may be enough for liability. *Id*. at 6593. The party asserting an agency relationship exists has the burden of proving its existence. *Petri v. Mercy Health*, No. 415 CV 1296 CDP, 2016 WL 7048893 at *5-6 (E.D. Mo. Dec. 5, 2016).

The disputed facts in this matter, if proved, would establish Dr. Leininger's liability; therefore, the Court cannot grant Dr. Leininger's Motion for Summary Judgment. Plaintiffs submitted emails and deposition testimony which put material facts in dispute including whether Dr. Leininger edited the script, oversaw marketing for the Movie, contacted and obtained permission from Huckabee to be the voiceover for the telephone calls, and was the final authority for implementation of the telemarketing scheme. If these facts are true, a jury could infer Dr. Leininger had control over the telemarketing campaign. Therefore, the Court will deny Dr. Leininger's Motion for Summary Judgment. Because Dr. Leininger is an officer of Courage

2012, his actions may also establish liability on its behalf. Therefore, its Motion for Summary Judgment must also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' First Motion for Partial Summary Judgment on the Issue of Damages [ECF No. 239] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion for Partial Summary Judgment on Defendants' Newly Pleaded Affirmative Defense of Consent [ECF No. 243] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Third Motion for Partial Summary Judgment on the Issue of Telemarketing [ECF No. 246] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Fourth Motion for Partial Summary Judgment on Defendants' Newly Pled Defenses of Due Care, Prior Established Business Relationship, and Comparative Fault [ECF No. 249] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Dr. James R. Leininger's Motion for Summary Judgment [ECF No. 265] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Courage 2012, LLC's Motion for Summary Judgment [ECF No. 267] is **DENIED**.

Dated this 5th Day of July, 2017.

E. Richard Webber

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE